IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Alexander Rafael Lignos López, Vanessa Padilla Muñoz, personally and on behalf of their minor son D.A.L.P. | CIVIL NO. |
| Plaintiffs | |
| vs. | DENIAL OF CIVIL RIGTHS, DAMAGES, DAMAGES UNDER STATE LAW |
| Servicios de Terapia Educativa Girasol, Inc., a/k/a STEG, a/k/a Colegio Girasol; Maribel Lugares Rossy, a/k/a Maribel Lugares as president, secretary and treasurer of Servicios de Terapia Educativa Girasol, Inc.; Maribel Lugares Rossy, in her personal capacity, and as member of her Conjugal Partnership with John Doe; John Doe, as member of his Conjugal Partnership with  Maribel Lugares Rossy; David Feliciano, in his personal capacity and as member of his conjugal partnership with Fulana de Tal; Fulana de Tal as member of her conjugal partnership with David Feliciano; Azarielis Ozorio, in her personal capacity, and as member of her Conjugal partnership with Mark Doe; Mark Doe as member of his Conjugal Partnership with Azarielis Ozorio; James Doe; Peter Doe; Company ABC and Company DEF. | JURY TRIAL DEMANDED |
| Defendants | |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE COURT:

COME NOW, Plaintiffs, Alexander Rafael Lignos López, Vanessa Padilla Muñoz,

personally and on behalf of their minor son D.A.L.P., through the undersigned attorney, and very

respectfully allege, state, and pray as follows:

### I. INTRODUCTION

1.    This is an action for redress of grievances and damages of persons acting under color of state law under 42 U.S.C. § 1983. Damages are also requested under Puerto Rico Civil Code, Law 55 of June 1, 2020, article 1536, 31 L.P.R.A. § 10801.

## II. JURISDICTION AND VENUE

2.    This Honorable Court has subject matter jurisdiction under 42 U.S.C. § 1483, therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331. Supplementary jurisdiction is also present under 28 U.S.C. § 1367(a) since state law claims for damages form part of the same case or controversy as the federal claims.

3.    Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b), since all significant acts giving rise to this action occurred in Puerto Rico and Puerto Rico is also the residence of all defendants.

## III. THE PARTIES

4.    Plaintiff Alexander Rafael Lignos López, is of legal age, married, self-employed, and resident of Guaynabo, PR, hereinafter "Mr. Lignos."

5.    Plaintiff Vanessa Padilla Muñoz, is of legal age, single, a businesswoman, and resides in San Juan, PR, hereinafter "Mrs. Padilla."

6.    Plaintiff D.A.L.P. is a minor, single, student and resides in San Juan, PR, he is represented in the instant case by his parents Mr. Lignos and Mrs. Padilla.

7.    Mr. Lignos and Mrs. Padilla have shared parental rights over D.A.L.P., and Mrs. Padilla has physical custody of D.A.L.P. Plaintiff D.A.L.P. is a special education student, with mental retardation, deaf and with other conditions that are reflected in significant deficits in the following areas: oral communication, receptive, expressive, and pragmatic language. He also has delays in grapho-motor, visual motor sensory and attention modulation, and cognitive development. In the educational area he shows significant

delays in the areas of reading, writing and mathematics. In relation to his age peers (approximately 16 years old) he performs significantly below the expected level. For example, he cannot read or write.

8.    Defendant Servicios de Terapia Educativa Girasol, Inc., a/k/a Colegio Girasol, a/k/a STEG (hereinafter "Colegio Girasol") is a corporate entity registered in the Puerto Rico State Department as a domestic corporation (under the name Servicio de Terapía Educativa Girasol Inc.), non-profit, under registry number 49771.

9.    The designated addresses of Colegio Girasol in the State Department's Corporation Registry are the following: physical address: 38 Mayaguez Street, Urb. Perez Morris, San Juan, PR 00917; Postal: P.O. Box 9300623, San Juan, PR 00928.

10.    The name and address of Colegio Girasol's resident agent is Maribel Lugares, physical address, Mayaguez Street, San Juan, PR 00917; postal address, Mayaguez Street, San Juan, PR 00917.

11.    Colegio Girasol is directly or vicariously responsible for the torts, damages and constitutional violations hereinafter described.

12.    Mrs. Maribel Lugares Rossy acts or represents to be, as per the State Department's Corporations Registry, the president, secretary, and treasurer of Colegio Girasol with the following addresses: physical address: Urb. Pérez Morris, 38 Calle Mayaguez, San Juan, PR 00917; and postal, P.O. Box 9300623, San Juan, PR 00928.  As per information and belief, Mrs. Maribel Lugares Rossy, is the director or person that controls and supervises Colegio Girasol's daily operations and stablishes its policies, she is responsible, jointly or separately, directly or indirectly, by herself, with or through her subordinates, agents, employees, partners, or other persons, for the events, acts or omissions that took place in the Colegio Girasol, described hereinbelow, and that caused

the damages and constitutional rights violations described in the instant verified complaint, as well as for acts of tolerance, failure to inform, failure to mitigate or correct, as to the acts described henceforward.

13.     Mrs. Maribel Lugares Rossy, is sued in her official character as Colegio Girasol principal functionary, as well as in her personal character for the actions and omissions described in the instant verified complaint. Her husband John Doe, whose name is presently unknown but will be substituted as soon as it is known, and their Conjugal Partnership are also sued in the instant complaint in their personal capacity.

14.     Defendant David Feliciano is, or was at the time of described events, Colegio Girasol's dean of Discipline or Student Dean and as such, responsible to investigate and take actions related to the events described henceforward, both before and after such events. He is sued in his personal character and as a functionary of Colegio Girasol. His wife, Fulana de Tal, whose name is presently unknown, but will be substituted as soon as it is known, and their conjugal partnership are also sued in their personal capacity.

15.     Defendant Azarielis Ozorio is or was at the time of events described henceforward a teacher in charge of students, including D.A.L.P.  She is sued in her personal character and as a functionary of Colegio Girasol, her husband, Mark Doe, whose name is unknown at this time but will be substituted as soon as it is known, and their Conjugal Partnership are also sued in their personal character. She is sued in her personal character and as a functionary of Colegio Girasol because at the time of the events described henceforward, she was the teacher in charge of the students, including D.A.L.P. and took or neglected to take action causing damages, or to prevent or mitigate the actions leading to the damages described herein.

16.     James Doe and Peter Doe are natural or juridical persons that at all pertinent times

were or are functionaries, employees, agents, partners of Colegio Girasol, Colegio Girasol's contractors or related entities, and or persons that at all pertinent times when the events described henceforward took place, were engaged in performing activities or were present at Colegio Girasol's facilities, and caused, participated in, tolerated, assisted, failed to act or covered up, the described actions and/or failed to prevent, inform or take actions to prevent, mitigate, inform or correct the acts and/or omissions that caused the henceforward described damages.

17.    In Colegio Girasol's internet webpage, www.stegpr.com [1], this entity represents that it offers educational therapies, speech therapies, psychological therapies, and behavior modification for children that have been diagnosticated with attention deficit, oppositional defiant disorder, among others challenging conditions to, allegedly, help the child to overcome his/her conditions and attain a superior academic level.

18.    Colegio Girasol and the persons mentioned above were providing special education services on behalf and under contract of the Department of Education of the Commonwealth of Puerto Rico ("DOE"), so that a public education could be made available to D.A.L.P. as required under federal and local statutes and regulations for the benefit of D.A.L.P.

19.    Insurance companies ABC y DEF, are corporate entities existing or conducting business under the laws of the Commonwealth of Puerto Rico to provide insurance and, upon information and belief, have issued insurance policies that cover the damages claimed in the instant complaint against some or all codefendants, be them natural or juridical persons, in their individual character or jointly and/or in their character as

---

[1] As examined last time on July 24, 2022, www.stepr.com.

functionaries, employees, agents, or person to or related to Colegio Girasol or any other affiliated entity.

**IV. Facts common to all causes of action.**

20.     Plaintiffs restate and incorporate per reference all the allegations and averments in the previous paragraphs.

21.     Minor D.A.L.P. was enrolled at Colegio Girasol for school year 2019-2020 on August 2019, and received services until December 2021, through the purchase of services arrangements of the Department of Education of the Commonwealth of Puerto Rico ("DOE"), under the Individuals with Disabilities Educational Act ("IDEA"), 20 U.S.C. 1401, et seq.

22.     Payment for the services D.A.L.P. was receiving at Colegio Girasol were made by the DOE through reimbursement, which imply that they were made once the Department approved invoices for services provided. This meants that payments were usually in arrears for up to several months.

23.     D.A.L.P. received services in accordance with an individualized educational program ("IEP") at no cost to his parents because he was placed there or referred there by the DOE as a means of carrying out the requirements of the state law governing the provision of educational and related services to special education students within Puerto Rico, as well as to comply with IDEA's requirements.

24.     Upon information and belief, Colegio Girasol accepted such form of payment from many or most students, due to the high cost of tuition, related educational services, and therapies, that few parents could directly pay.

25.     As to Plaintiffs, Colegio Girasol accepted during the parties' two and a half-year relationship, that payments be made when the Department of Education disbursed the

6

funds, even if there were delays, without this fact impairing the continuation of services for D.A.L.P. until December 14, 2021, since the monthly costs exceeded $3050.

26.     On December 14, 2021, for the first time and while other events, henceforth detailed, took place, the parents, Mrs. Padilla and Mr. Lignos, were informed that D.A.L.P. would not be receiving grades, nor allowed to take the semester final exams, due to a delay in payments.

27.     Mrs. Padilla, D.A.L.P.'s mother is a teacher and is knowable of teaching techniques for the management of special education children.

28.     When the Covid-19 pandemic started in March 2020, and until conclusion of the school year in May 2020, D.A.L.P. received services at home through the process of picking-up assignment at the school or were sent via email.

29.     From August 2020 through May 2021, classes at Colegio Girasol were held remotely. During this timeframe, parents found that IEP's requirements were not followed, and that teaching staff quality was declining.

30.     Nevertheless, during this period, in which D.A.L.P. received remote services in her mother's home, D.A.L.P.'s behavior was satisfactory, to the point that his psychiatrist discontinued his medication to treat his hyperactivity from August 2020 to May 2021.

31.     In August 2021 the medications were restarted due to the starting of in-person classes at Colegio Girasol.

32.     Between September and November 2021, Colegio Girasol notified the parents of the occurrence of several instances of what the school deemed "bad behavior." These instances consisted in D.A.L.P. allegedly hitting a table, tearing off posters and using a derogatory language. Other than the described behavior, that were registered in D.A.L.P.'s notifications notebook, there is no evidence of violent acts against another

person or himself, or behavior that interfered with the educational process. Nor was any information provided as to what motivated such behavior, despite parents' inquiries.

33.    Colegio Girasol's promotion materials indicate that it provides services to children with hyperactivity, attention deficit, defiant oppositional disorder, and other behaviors which suggest that they can or should manage behaviors such as those described in relation to D.A.L.P. and even other behaviors that could significantly impact the educational process.

34.    Despite these events, Colegio Girasol, did not summon the parents at any time to evaluate D.A.L.P.'s behavior as to the incidents annotated in the notification notebook.

35.    It was the parents, Plaintiffs in the instant case, who repeatedly requested a meeting with the teaching staff responsible for D.A.L.P. and the school administration to discuss the reports notified solely through entries in the notification notebook.

36.    A meeting was finally scheduled for October 2021, but it was not fruitful because the teachers that dealt directly with D.A.L.P. were new teachers, recently employed by the school, that did not sufficiently know D.A.L.P.'s background and peculiarities.

37.    Upon information and belief, many of Colegio Girasol's teaching staff had resigned on or around October 2021.

38.    The reasons for the resignation for part of the teaching staff were never disclosed by the school.

39.    Parents do not know, and Colegio Girasol never informed them the professional credentials of the teachers, assistants and other personnel that went on to deal with their son. Parents were not informed beforehand, nor they had knowledge or received any explanation of the personnel changes that were taking place at the school, despite the effect this could have in the services their child was supposed to receive.

40.     By November 2021, it is alleged that an incident took place in which D.A.L.P., allegedly, insulted a teacher and threw away a ball. This alleged incident, as the ones before, was included in the notification notebook, without any request for the parent's intervention and any action being taken by Colegio Girasol.

41.     Once again, it was the parents who contacted the school to request a meeting concerning D.A.L.P.'s alleged behavior, without any response from Colegio Girasol.

42.     The events transpiring at Colegio Girasol caused D.A.L.P. to cry and express, within his substantial communication limitations, his inconformity and fear of attending Colegio Girasol.

43.     Frequent physical manifestations of distress such as abdominal pain and discomfort were also recurrent during this period.

44.     D.A.L.P.'s psychologist recommended a change of school, and the parents initiated the process to effectuate the school change.

45.     On Monday, December 14, 2021, as in previous occasions, Mr. Lignos, father of D.A.L.P., arrived at Colegio Girasol at, approximately, 4:15pm to pick up his son. The school's receptionist tells him that D.A.L.P. had misbehaved and that the details were in the notification notebook. No additional information was provided, despite Mr. Lignos insistence with Jorge Joel Torres, Dean of Academic Affairs, and the receptionist, who declined to provide any additional information referring to the information in the notebook. Mr. Lignos requested to speak with Mrs. Lagares concerning the delay in payments but was informed she was not available.

46.     When Mr. Lignos removed D.A.L.P.'s face mask in the car, he observes that it was stained with blood, that D.A.L.P. had swollen lips and that part of a tooth was broken.

47.     In the notification notebook it was written that at 10:15am, D.A.L.P. was hitting

9

his school desk and chair when another student, that has not been identified assaulted and slapped him, allegedly causing D.A.L.P. to bite his lip and start bleeding.

48.     This is inconsistent with reports of the same time frame indicating inadequate behavior and foul language, but not a physical altercation. At least four different documents were prepared in apparently an hour time.

49.     The incident report prepared by the teacher, or the Student Dean states that they rinsed his mouth, and the area was cleaned to stop the bleeding.

50.     The parents consulted the child's pediatrician who recommended the treatment to be followed at home.

51.     The information from the notification notebook is a discipline report apparently signed by the teacher Azarielis Ozorio and by Daniel Feliciano, Colegio Girasol's Student or Discipline Dean, that, upon information and belief, was not present at the time of the incident. The report does not indicate who assaulted D.A.L.P. nor it mentions who, teachers, assistants, etc., was or were present at the time of the incident, except that it can be concluded that Mrs. Azarielis Ozorio was present. Mr. Daniel Feliciano, in his personal character and as Discipline or Student Dean, was negligent in no taking measures so that students at the school maintained an appropriate level of discipline and were appropriately supervised at all times. This could have prevented the damages arising from the assault. Once these damages occurred neither Mr. Feliciano nor Mrs. Azarelis Ozorio, or any other school official, took the actions called for to preserve D.A.L.P. physical and emotional health and bodily integrity by seeking medical attention. He also failed to inform the parents in any way, much less in a prompt, timely, and effective way, of the incident and injuries suffered by their son, thus, multiplying damages, anguish, and distress of all Plaintiffs.

10

52.    As a described above, no notice whatsoever was given to the parents until the end of the school day when the child was picked up by his father and, then, the only information was what was in the notebook despite the father's insistence to obtain additional information.

53.    Mrs. Azarielis Ozorio, the teacher that was supervising the group of students at the time of the incident, did not take action to prevent the incident, and after it occurred did not take action to mitigate damages, offer a safe environment, obtain medical assistance, or inform the parents of what took place; however, she did prepare several inconsistent documents.

54.    Although Colegio Girasol has alleged that their senior staff was not notified on the assault, at some time Mr. Feliciano, who purportedly would be considered a senior staff person, was informed by someone.

55.    Instead of evaluating what transpired in the classroom leading to the injuries suffered by D.A.L.P., the school informed that the child could not return to the school due to alleged lack of payment, not for misbehavior.

56.    Upon information and belief student groups at Colegio Girasol consist of only four to five students.

57.    It is highly unlikely that if D.A.L.P. was actively misbehaving and showing a disorderly conduct foul language and moving around the classroom to open the closet door, that the teacher, if in fact present at the time, would not have been able to prevent an assault by another student.

58.    Even if the alleged conduct by D.A.L.P. took place in the various ways described, if it is not likely that school personnel in a school that promotes itself as specialized in dealing with disabled children with ADHD and oppositional disorder could not have

11

managed the situation to prevent physical and emotional harm.

59.     In the various alleged incidents that took place before December 14, 2021, the school did not discuss any measures to address the alleged misconduct conduct despite the parents' inquiries and their supposed expertise in dealing with special needs children.

60.     The incident on December 14, 2021, although more noticeable due to the plain-view evident physical harm and bleeding suffered by D.A.L.P., was, however, another event in a prevalent environment of neglect and mismanagement by Colegio Girasol in neglecting not only the proper education of the student but also their continued physical and emotional well-being, even when facing exigent circumstances such as a physical assault that resulted in physical harm.

61.     After contacting Colegio Girasol, the same day, December 14, 2021, to obtain additional information regarding the assault, the school director informs the parents that the personnel that attend to the students in the morning is not the same as the personnel in the afternoon and that she has no knowledge of the incident.

62.     Nevertheless, the parents did communicate with Mr. Daniel Feliciano, who purports to also be a health professional, who confirms that they, the school staff and/or supervisors, determined that it was not necessary to call the parents after the incident, despite D.A.L.P.'s physical injuries and bleeding, and decided to return him to the classroom, alleging that they would take action concerning the assailant, but without identifying him or explaining what actions were or would be taken.

63.     It remains unclear what exactly took place that day, December 14, 2021, in the classroom, except that D.A.L.P. was injured by someone at Colegio Girasol, there was a lack of supervision, something triggered D.A.L.P. reaction, and the school officials were not clear as to what happened, how to handle it and sought to dismiss the problem by

indicating that D.A.L.P. could not return to school.

64.     As noticed before, D.A.L.P.'s behavior and stress level deteriorated once he started in-person classes at the school in August 2021.

65.     The assault on December 14, 2021, was, therefore, a direct consequence of an atmosphere in which, as yet fully ascertained conditions at the school caused, at least, a significant turn-over of personnel, that among other factors, resulted or was a result of, a significant disconnect between the staff and supervisors' obligation to assure the well-being and welfare of the special need students under their care; as well as a disconnect with the students themselves, who were then left subject to neglect and/or abuse by other students and, probably, by action or omission, the school's personnel.

66.     Only such dual disconnect, between the student themselves and staff's own obligations, can explain that a special education student, with extremely limited comprehension and communication skills, could be left without medical attention and without notifying the parents, basically the whole day (from 10:15am to 4:30pm) with a bloody facemask, a broken tooth and face swelling. As far as we know he was not moved to any location and remained in the same room with the aggressor and the persons who allowed the aggression to take place. Even if it were to be eventually determined, that senior staff and supervisors were not aware of the incident, as they allege, the fact that junior staff could in such egregious way obviate the well-being and needs of a special education child, and the rights of the parents, denotes a significant culpable neglect or abuse by the whole staff.

67.     After the incident, and on that same day, December 14, 2021, Colegio Girasol, surprisingly informs that no final grades would be provided due to missing payments due to the DOE delay in forwarding payments, and that D.A.L.P. <u>cannot return to the school</u>.

13

Afterwards, no school functionary made any approach to any of the Plaintiffs, despite the fact that the payment was a routine delay and that the alleged behavioral problems had occurred before and no substantive action had been taken by the school.

68.     Mrs. Maribel Lagares Rossy, as president, secretary, treasurer and/or school director or person in charge of Colegio Girasol, and in her personal character, failed to properly supervise her personnel and/or directly take appropriate measures or give appropriate directions to guarantee the well-being, physical integrity, physical and emotional health of the students, particularly D.A.L.P., therefore, allowing the occurrence of the incident and also the damages as a result of the deliberate indifference to the overall well-being of the students, D.A.L.P.'s injuries and the described actions or omissions that led to those damages.

69.     All Colegio Girasol's personnel, mentioned in this complaint or presently unknown, were negligent in allowing the conditions causing damages to D.A.L.P. to be created and persist throughout the school semester without taking appropriate action to prevent, minimize or mitigate damages.

70.     It is unclear what exactly took place on December 14, 2021, except that D.A.L.P. was physically injured by someone to the point and bleeding and the school tried to prevent any investigation or review of the incident by preventing D.A.L.P.'s return to the school.

71.     After the incident of December 14, 2021, D.A.L.P. suffered a worsening of stomach problems that he had been suffering since returning to Colegio Girasol in August 2021, he has been anxious and shows an extreme repulse to Colegio Girasol even when in a car near the Colegio Girasol location. Prior to the incident on December 14, 2021, D.A.L.P. lost 15 pounds of body weight in a two-months period.

72.     Even after moving to a new school with substantially more welcoming atmosphere and personnel, D.A.L.P. continued showing a strong resistance to the use of uniforms or any action that suggest a school environment, reflecting a substantial continuing psychic and mental injury to D.A.L.P. due to his experience at Colegio Girasol, that has required extensive psychological treatment, that is still on-going just to somewhat facilitate his continued education. As previously described, D.A.L.P.'s behavior, stomachal problems and overall well-being were severely and negatively impacted by his stay at Colegio Girasol, particularly from August 2021 onwards when in-person classes resumed. The Academic problems started even earlier and although not directly causative of the significant damages incurred later because D.A.L.P. was receiving remote services at home, they show that concern for the students' education and particularly well-being was not a goal of Colegio Girasol.

73.     D.A.L.P. parents, co-plaintiffs Mrs. Lignos and Mrs. Padilla, have suffered and continue to suffer severe emotional damage due to having to observe their son, physical and emotional injuries while at Colegio Girasol, as well as the  severe emotional struggles in a school environment which should have been protective, and having to, in a daily and continuing basis having to accommodate and make substantial arrangements just to facilitate their son's education, physical and mental well-being up to the present and for the foreseeable future due to the traumatic experiences of his stay at Colegio Girasol.

**V. First Cause of Action. Violation of Civil Rights due to violation of Substantive Due Process of Law under 42 U.S.C. § 1983.**

74.     Plaintiffs restate and incorporate per reference all the previous allegations and averments in the previous paragraphs.

75.     Citizens of the United States have a right to bring a civil action for deprivation of rights under 20 U.S.C. § 1483, that states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,…"

76.     Persons denied rights guaranteed to them under federal law may vindicate those rights in appropriate cases by various remedies in federal courts, including suing for damages under 42 U.S.C. § 1983 for violation of federal constitutional and statutory rights. *Greenwood v. Peacock*, 384 U.S. 808, 829 (1966).

77.     Although the focus of 20 U.S.C. § 1983 is on misuse of power possessed by virtue of state law and made possible because wrongdoer is clothed with authority of state law, *Johnston v. Lucas*, 786 F.2d 1254 (5th Cir. 1986), private persons can be liable under 20 U.S.C. § 1983 when the private person, or entity, was performing a traditional public function or the private entity is "entwined" with the government. The analysis is fact sensitive. *Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22, 26 (1st Cir. 2002).

78.     In the instant case the defendants were providing special education to a student that qualified for a public education due to various disabilities.

79.     Since the DOE receives federal funds to provide special education services as part of the state's obligation to provide a public education, it cannot evade its obligation to provide a public education. When the state is unable to provide such services, it must contract with private institutions to provide the same. The Individuals with Disabilities Educational Act states, at 20 U.S.C. § 1412(a)(10)(B):

Children placed in, or referred to, private schools by public agencies.

**(i)** In general. Children with disabilities in private schools and facilities are provided special education and related services, in accordance with an individualized education program, at no cost to their parents, **if such children are placed in, or referred to, such schools or facilities by the State or appropriate local educational agency as the means of carrying out the requirements of this part** [20 USCS §§ 1411 et seq.] <u>**or any other applicable law requiring the provision of special education and related services to all children with disabilities within such State**</u>.
**(ii)** Standards. In all cases described in clause (i), the State educational agency shall determine whether such schools and facilities meet standards that apply to State educational agencies and local educational agencies <u>**and that children so served have all the rights the children would have if served by such agencies**</u>.

80.    The provisioning of a public education by the state is a traditional public function since other entities may provide private education, even for disabled students, however, such education does not constitute a free, appropriate public education under federal and local statutes, to which students can claim a constitutional right.

81.    The "Integral Educational Services for Persons with Disabilities Act, Law 51 of June 7, 1996, as amended, 18 L.P.R.A. § 1351[2], et seq., ("Law 51") states that it is the public policy of the state (Puerto Rico) to provide a **free, appropriate public education** to disabled persons. 18 L.P.R.A. § 1352 (Emphasis added).

82.    This state law purports guarantee a right, to all persons with disabilities, the right to: "[r]eceive protection against **negligence**, **abuse**, prejudice, abuse or carelessness by their parents, **teachers and the community in general**." 18 L.P.R.A. § 1353 (Emphasis added).

---

[2] English version of the Act at advancelexis.com, 18 L.P.R.A. § 1351, that indicates that it is "[c]urrent through all acts translated by the Translation Office of the Puerto Rico Government through the 2011 Legislative Session and various acts from 2012 to the present. All English text of the law refer to the Lexis Advance English version unless otherwise noted.

83.     Section 1355 of Law 51, 18 L.P.R.A. § 1355, states that among the duties of the

Office of the Assistant Secretary are, emphasis added:

> (10) Establish covenants or agreements with the agencies, **private institutions** and municipalities for the **rendering of integrated services** to participating students.

> (14) Ensure that **the state** and federal resources appropriated **for the rendering of educational services and related services** of persons with disabilities are used in the most effective manner and in accordance and **in accordance with the applicable laws and regulations**.

> (16) Establish the mechanisms that guarantee that all persons with disabilities **are granted the due process of law in the substantive as well as in the procedural aspect**.

> (19) Respond before any legal forum for the compliance of this chapter with the support of the resources of the corresponding departments.

84.     Integrated Services, or Integral Services, is defined as: "Educational and related

services furnished in a coordinated manner that are compatible with certain common

goals and objectives inferred from the individualized services program." 18 L.P.R.A. §

1351(21).

85.     Education related services means: "**Indispensable health and support services**

**that are required in order for the person with disabilities to benefit from the special**

**education** so that he/she may develop his/her potential to the maximum." 18 L.P.R.A. §

1351(22).

86.     As shown by the above referenced statutes, the private institution, Colegio

Girasol, and all the defendants in the instant case, were performing a traditional public

function, thus becoming agents of the state, because they perform a function that only

the government can provide, provide a <u>free public education</u> to special education

students. No private institution is required to provide public education at no cost. Nor

are private institution required by law to provide these services to all disabled persons.

18

18 L.P.R.A. § 1352.

87.    Colegio Girasol as a private institution provide services in accordance with an Individualized Educational Program ("IEP") for D.A.L.P. based on a covenant or agreement with the state, to render integrated services to the students it enrolls at the behest of the state as a means of complying with state law, <u>for the rendering of educational and related services</u>, 18 L.P.R.A. § 1355(10).

88.    Based on state law, these integrated services or educational and related services must be provided in accordance with applicable laws and regulations, 18 L.P.R.A. § 1355(14), which include that the disabled person receives <u>substantive as well as procedural due process of law</u>. 18 L.P.R.A. § 1355(16).

89.    The services provided by the private institutions, under the covenants with the state include health and support services required for the student to benefit from the special education, in addition to the educational services. 18 L.P.R.A. § 1351(21 and 22), as part of the integrated services the private institution provides at the behest of the state.

90.    Since the private institution, by virtue of the state laws, must guaranteed that services must be provided in accordance to laws and regulations to prevent not just negligence but abuse by among others teachers and the community in general to prevent violations to due process of law in their substantive and procedural aspects, it is inevitable that Colegio Girasol and all the defendants are state actors, since they provide services that only the state can provide and, thus, their actions are entwined with that of the government, because that is what the state's regulations require.

91.    The actions described in the complaint constitute a violation of substantive due process under the Fourteenth Amendment of the US Constitution because the actions of Colegio Girasol constitute either policy or custom actionable under 1983 and and/or a

state-created danger.

92.     A child has a constitutional right to bodily integrity that cannot be threatened, much less violated due to the deliberate indifference of a state actor.

93.     Colegio Girasol can be liable as an entity under 1983 since violations against D.A.L.P took place due to an official policy or custom of the school.

94.     Official Policy can occur when there is a decision adopted or promulgated by the entity or a persistent widespread practice that constitutes a custom that represent policy. *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351 (5th Cir. 1987).

95.     In the instant case the named and unknown persons that interacted with D.A.L.P. at the school were, both, directly responsible for the illegal actions that violated constitutional rights but were also executing Colegio Girasol's official policy or were acting in accordance with a well settled and common custom or policy in Colegio Girasol in the manner students, including D.A.L.P., were treated or not provided adequate supervision and care that caused the deprivation of constitutional rights.

96.     The teacher in charge of the classroom, their supervisors and school officials, at the various times the events described in the complaint and particularly the events of December 14, 2021, showed a tremendous lack of concern and conscious disregard for the health and wellbeing of D.A.L.P. by not preventing actions that caused abnormal stress and psychological trauma, but also actual physical injury and a subsequent callous treatment, through lack of medical and psychological treatment, or even sensible and common sense matters as cleaning him, or changing a bloodied facemask, and contacting the parents, after an obvious physical attack and physical injuries, amounting to callous treatment and utter disregard for the child's well-being as well as the parent's rights to be informed and be able to exercise their parental duties to protect their child. The events

took place approximately at 10:15am and the injured child was picked up by his father at 4:30pm without any previous notification to them by the school having even been attempted.

97.     Even if it were to be held that the defendants did not directly cause the injuries on December 14, 2021, they failed to act to protect the child before the attack by close supervision and prevention measures in classroom of only 4 or 5 students with various levels of disability.

98.     An alleged abuse of state power, which the law clearly required the private institution to undertake and mentioned above, can take the form of a failure to protect the child, if it raises to a level of callous indifference. *Lopez v. Houston Indep.*, supra, at 356.

99.     Allegations of Callous indifference are sufficient to state a claim of constitutional deprivation under § 1983 because the State, through the private institution, had a statutory mandate to protect the child including health concerns and the preservation of substantive and procedural dure process of law. This creates a "special relationship." Here, the harm that is being claimed was not caused solely by the assailant, but by the callous indifference that allowed the attack to occur in the first place, failure to mitigate and the tremendous lack of <u>basic human decency</u> in not even providing a clean facemask or calling the parents of a severely disabled child that was injured by a classmate, subjecting him to what amounted <u>to torture</u> for the whole day. These harms were caused by the state actor, not by a third-party assailant. The school for special education children took on the duty to look after children with limited liberty because of their condition. *Doe v. Convington County Sch. Dist.*, 649 F.3d 335, 340 (5th Cir. 2011).

100.    The callous indifference extends to the months before December 14, 2021, when

the school allowed a deleterious environment that not only caused ongoing physical and emotional harm to D.A.L.P., but created circumstances of allowing actual direct physical injury, that the school and staff was not willing to mitigate or relief in any way, nor to call for assistance from the parents, which shows and utter disregard for students and, particularly, D.A.L.P., through the whole semester.

101.    Even if it were found that a "special relationship" was not created, the defendants' conduct meets the threshold for a substantive due process violation because the defendants willfully violated D.A.L.P. and parents' rights by allowing the attack to happen, and even if the attack was not preventable, by failing to take measures to prevent, mitigate and limit the damage. It shows a conscious disregard for the child's well-being.

102.    The attack not been preventable would in any case be a dubious claim since the student groups consisted of only 4 to 5 students, with special education needs, which included autism and children with oppositional defiant disorder, which, of course, could have required sufficient competent personnel to prevent injuries. Not having that personnel and appropriate protocols available was not just an invitation, but the facilitation and encouragement of an, otherwise, preventable incident to occur.

103.    As stated above, a conscious disregard was also shown throughout the months before December 14, 2021, being that the events of that day, as dramatic, injurious and damaging as they are, were also an inescapable and egregious validation of the extreme lack of concern and endangering of the student's well-being and, even, physical integrity maintained in place by its negligent practices and customs.

104.    The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property without due process of law. *Deshaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989). Its purpose was to prevent the abuse of power

22

by the state, *Id.* at 196.

105.    By Colegio Girasol failing to notify the parents of the incident and then doing nothing to alleviate the conditions in which D.A.L.P. was held captive through his ordeal, the school and its personnel adopted a position of absolute power over the well-being of a child in a moment in which circumstances that arose during their control of the child demanded appropriate actions. By not doing anything, the school and its personnel engaged in a blatant abuse of power.

106.    This abuse of power and callous disregard extents to the months before December 14, 2021, as described above and are what allowed the events of December 14, 2021, to take place in the manner that they occurred and conditioned the tortuous, irresponsible and dangerous response that took place.

107.    All the Plaintiffs damages are a direct result of events and practices under the absolute control of the school and the staff mentioned in the complaint or other staff or persons as yet unknown and would not have happened except for D.A.L.P. having been enrolled at Colegio Girasol and under the control of its staff, jointly or severally, in their personal and official character, throughout the school-days, at least, since August 2021 and specially on December 14, 2021. Therefore, all damages are directly related and are a direct consequence of the actions and or omissions of all the defendants, known or presently unknown, on December 14, 2021, and the months before that date.

108.    The specific damages suffered by all plaintiffs are further discussed below in the Second Cause of Action, which description is fully incorporated herein and part of the claim for damages under section 1983.

**VI.    Second Cause of Action. Physical and Emotional Distress damages suffered by minor D.A.L.P. and Emotional Distress damages suffered by co-plaintiffs Mr. Lignos and**

23

**Mrs. Padilla per state torts and damages statutes.**

109.    Plaintiffs restate and incorporate per reference all the previous allegations and averments in the previous paragraphs.

110.    Article 1536 of Law 55 of June 1, 2020, 31 L.P.R.A. § 10801, states that a person that causes damages to another through negligence or fault is obliged to repair the damage done.

111.    Minor D.A.L.P. suffered physical damage by being assaulted to the point of physical damage to its teeth and face including bleeding that required medical care, while under the supervision and care of Colegio Girasol and all the codefendants, directly or indirectly.

112.    Minor D.A.L.P. suffered pain and emotional anguish as a direct result of the physical assault suffered while under the supervision and care of Colegio Girasol and all the codefendants, directly or indirectly.

113.    The pain and emotional anguish were exacerbated and intensified due to the Colegio Girasol, and all the codefendants, failure to provide medical and emotional assistance or to promptly and timely notifying the parents of D.A.L.P. so that they could assist in timely alleviating and taking care of D.A.L.P. to minimize damages.

114.    Minor D.A.L.P. suffered intense and prolonged emotional distress and emotional pain for having been assaulted while under the custody of Colegio Girasol and having to remain in the presence of the aggressor and without any assistance the entire school day.

115.    Minor D.A.L.P. suffered physical and emotional damages and consequences as a result Colegio Girasol's poor educational practices, lack of appropriate protocols to handle situations of violence at the school that should have been anticipated due to the characteristics and needs of the students serviced by the school.

116.    Minor D.A.L.P. suffered lasting psychological and emotional damages and consequences because of Colegio Girasol's failure to maintain a stable, knowledgeable, professional and committed faculty and school officials who could competently educate and supervise special needs children and well as detrimental educational practices. This led to a result that instead of receiving an appropriate education as was required under applicable statutes in a safe and welcoming environment, D.A.L.P. was subject, instead to an anxiety and damages producing experience lasting for, at least, months, that caused emotional trauma, at least, since in-person classes started on August 2021, and that led to substantial physical and emotional consequences and long lasting emotional and psychological consequences that limited the learning process and that turned into a form of continuous emotional assault.  This environment even led to the physical assault described above. The substantial physical consequences consisted of stomachal problems during extended period of time while at Colegio Girasol and for some time afterwards and the physical injuries described above. The lasting emotional and psychological consequences of the environment Colegio Girasol allowed to exist while D.A.L.P. was enrolled there, persisted even after D.A.L.P. was changed to a new school. As demonstrated, for example by a rejection of uniforms and strong reactions when approaching areas that remind him of Colegio Girasol.

117.    It is unclear if D.A.L.P. will fully overcome the traumatic experiences suffered while at Colegio Girasol.

118.    Co-plaintiffs Mr. Lignos and Mrs. Padilla suffered intense emotional damages by having to observe the emotional distress their son experienced after in-person classes started at the Colegio Girasol, also manifested in physical conditions suffered by their son. The emotional damages that were taking place due to the school's blatant and

cavaliere attitude towards students and particularly D.A.L.P. was magnified and made self-evident when the school allowed their lack of oversight, supervision and control of the students and their personnel to cause physical damage to D.A.L.P. on December 14, 2021. These damages were further exacerbated when the negligent, abusive and cavalier attitude of the school directors and personnel allowed D.A.L.P. to remain injured, without any medical assistance, despite having been physically assaulted and been bleeding, for just about the entire day, not even a clean face mask was provided and no notice to parents was provided. The parents, co-defendants Mr. Lignos and Mrs. Padilla, suffered intensively when they were forced to contemplate that their son had been left without medical attention and alone, without their parents' assistance, in the same classroom in which he was assaulted, with the consequences such experience has had, is having, and could still have in the future.

119.    The parents have also suffered intensively by their present knowledge that they unknowingly had placed their child for months in an environment, that they trusted was a specialized school for children such as D.A.L.P., with competent and dedicated staff, but that ultimately was shown to have been profoundly detrimental to their child, to the point of even putting his physical and emotional well-being in actual danger.  This damage is compounded by their knowledge that the consequences of D.A.L.P. stay at Colegio Girasol are still on-going and that damage might be irreversible.

120.    All the Plaintiffs damages are a direct result of events and practices under the absolute control of the school and the staff mentioned in the complaint or as yet unknown and would not have happened except for D.A.L.P. having been enrolled at Colegio Girasol and under the control of its staff, jointly or severally, in their personal and official character, throughout the schooldays, at least, since August 2021 and specially on

December 14, 2021. Therefore, all damages are directly related and are a direct consequence of the actions and or omissions of all the defendants, on December 14, 2021, and the months before that date.

**VII. Claim for damages and relief requested.**

121.    Present, past, and future damages to D.A.L.P. are estimated in a sum not less than $4,000,000.00, for actual and future consequences of these illegal, unconstitutional, negligent, abusive, and culpable acts by all codefendants, jointly and severally.

122.    Present, past, and future damages to D.A.L.P.'s parents, Mr. Lignos and Mrs. Padilla, are estimated in a sum not less than $1,000,000.00 each, for actual and future consequences of these illegal, unconstitutional, negligent, abusive and culpable acts by all codefendants, jointly and severally.

123.    Plaintiffs further aver that the defendants acts, and omissions were performed with an intentional and grave lack of concern for the safety and well-being of D.A.L.P. and the other plaintiffs and as such, additional damages are due under Article 1538 of the Puerto Rico Civil Code to the maximum extent allowed by law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against all defendants, jointly and severally, in the amount of not less than Four million dollars ($ 4,000,000.00) for damages suffered by D.A.L.P. as well as likely future consequences and damages; not less than one million dollars ($ 1,000,000.00), for co-defendant Mr. Lignos; plus, not less, than one million dollars ($ 1,000,000.00) for codefendant Mrs. Padilla, plus the costs of this action, reasonable attorneys' fees, and such other and further relief as this Honorable Court deems just and proper, including damages under article 1538 of the Puerto Rico Civil Code.

Plaintiffs hereby demands trial by jury of all issues so triable.

27

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 31st  the day of August 2022.

Antonio Borrés Otero, Esq.
P.O. Box 361608
San Juan, PR  00936-1608
Tel. 787-404-8637
Fax  787-705-8618
aborreslaw@gmail.com


s/ *Antonio Borrés Otero*
Antonio Borrés Otero
USDC-PR No.213210


Plaintiffs hereby demands trial by jury of all issues so triable.