## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LIGNOS-LOPEZ,** *et al.*, | |
| *Plaintiffs,* | |
| **v.** | Civ. No. 22-cv-1419 (MAJ) |
| **SERVICIOS DE TERAPIA EDUCATIVA GIRASOL, INC.,** *et al.*, | |
| *Defendants.* | |

## OPINION AND ORDER

## I.    INTRODUCTION

Before the Court is a Motion to Dismiss (the "Motion") filed by Defendants, Maribelle Lagares*, et al.*, ("Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6) challenging this Court's jurisdiction to hear Plaintiffs' Complaint. (**ECF No. 116**). As will be explained, Plaintiffs, Alexander Rafael Lignos López and Vanessa Padilla Muñoz, personally and on behalf of their minor son D.A.L.P., purport to allege violations of substantive due process rights against a private school, Servicios de Terapia Educativa Girasol, Inc., ("Colegio Girasol").[1] (**ECF No. 49**).

Defendants move for dismissal arguing that Plaintiffs' claims should be dismissed for failure to exhaust administrative remedies as required under the Individuals with Disabilities Education Act ("IDEA"). (**ECF No. 116**). Defendants' Motion to Dismiss (the "Motion") in effect contends that, based on this Court having previously dismissed Plaintiffs' Third-Party Complaint against the sole state actor in this case—the Department

---

[1]    Named Defendants, sued in their personal capacities, are alleged to have worked at Servicios de Terapia Educativa Girasol, Inc., during the relevant time period of events described in the Complaint. These Defendants include, Maribelle Lagares (and her husband, Efraín Pomales), Daniel O. Feliciano, and Azarieliz Osorio. (**ECF No. 49**).

of Education of Puerto Rico—for lack of federal jurisdiction, the Court should likewise dismiss the Complaint against the "individual codefendants Efraín Pomales, Maribelle Lagares-Rossy and their Conjugal Partnership." *Id.* at 4.

Upon careful consideration of the filings, including Plaintiffs' Complaint (**ECF No. 49**) and Plaintiffs' Response to the Motion (**ECF No. 118**), the Court finds that Plaintiffs' claims are indeed pursued under the IDEA, albeit guised as claims of civil rights violations of substantive due process under 42 U.S.C. § 1983.[2] *Id.* at 16-24. Consequently, Defendants' Motion to Dismiss is **GRANTED**. (**ECF No. 116**).

## II.    BACKGROUND

### a.  Procedural Background

On January 29, 2024, this Court granted Defendants' Motion to Dismiss Plaintiffs' Third-Party Complaint, resulting in its dismissal without prejudice. (**ECF No. 114**). The next day, the Court issued an Order to Show Cause considering this dismissal, seeking to confirm the subject-matter jurisdiction for Plaintiffs' primary action under Federal Rule of Civil Procedure 12(h)(3). (**ECF No. 115**). The Order directed Plaintiffs to show cause as to why the action should not be dismissed for lack of subject matter jurisdiction due to the non-exhaustion of administrative remedies under the IDEA, or why such exhaustion was not necessary in this case. *Id.* (citing *Parent/Prof'l Advocacy League v. City of Springfield*, 934 F.3d 13, 19 (1st Cir. 2019); *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1099 (1st Cir. 1989)).

---

[2]    In rendering this decision, the Court has also taken into consideration the arguments put forward by the parties in relation to the Court's Show Cause Order which sought—sua sponte—to confirm whether this Court had subject matter jurisdiction to entertain Plaintiffs' suit. *See* (**ECF Nos. 115, 119, 124, 129**).

On January 30, 2024, Defendants filed the instant Motion to Dismiss for Lack of Jurisdiction. (**ECF No. 116**). Plaintiffs opposed the Motion (**ECF No. 118**) and responded to the Order to Show Cause (**ECF No. 119**) the following day. On February 26, 2024, Plaintiffs moved for reconsideration of the Order dismissing their Third-Party Complaint (**ECF No. 123**). Defendants responded to Plaintiffs' response to the Order to Show Cause (**ECF No. 124**) and to the Motion for Reconsideration (**ECF No. 128**) on March 8, 2024. Thereafter, Plaintiffs replied to Defendants' response to the Order to Show Cause (**ECF No. 129**) and to Defendants' opposition to the Motion for Reconsideration (**ECF No. 132**).

### b. Factual Background

As has already been detailed by the Court in previous Opinions relating to the instant matter (**ECF Nos. 114, 133**), the Fifth Amended Complaint (the "Complaint")— the operative pleading here—paints a hazy picture of a December 2021 incident that left D.A.L.P. injured at Colegio Girasol. *Id.* By the Complaint's own admission, the details are murky: Plaintiffs concede it is "unclear what exactly took place" on December 14, 2021, "except that D.A.L.P. was physically injured by someone" at the school. *Id.* at 13, 15. It is alleged that an unknown student assailant slapped D.A.L.P. in the face while he was in a Colegio Girasol classroom. *Id.* at 11.

Plaintiffs pin the blame on "the named and unknown persons that interacted with D.A.L.P. at the school" for this incident and others, alleging that they are "responsible for the illegal actions that violated [his] constitutional rights." *Id.* at 21. Plaintiffs go further, and also assert that these bad actors were "executing Colegio Girasol's official policy or . . . . common custom or policy"—a practice that allegedly spawned a dearth of supervision for vulnerable students like D.A.L.P. *Id.* Plaintiffs also take aim at the school's later

actions, which they say breached an agreement to keep providing educational services, even if tuition payments were delayed. *Id.* at 7.

      As detailed in the Complaint, Plaintiffs allege that due to inadequate supervision, school officials' negligence, and failure to maintain "an appropriate level of discipline" in a classroom of four to five students with special needs, an altercation occurred between D.A.L.P. and another student. During this altercation, the other student allegedly hit D.A.L.P., causing him to bite his lip and start bleeding. *Id.* at 10-12. Following the classroom altercation, the Complaint alleges that Colegio Girasol later informed Plaintiffs of a decision to withhold D.A.L.P.'s access to education and final grades due to unpaid tuition, contrary to their prior arrangement. *Id.* at 7, 14.

      More specifically, Colegio Girasol, under an agreement with the state, provided services to D.A.L.P. "in accordance with an [I]ndividualized [E]ducational [P]rogram ("IEP")" because he was "placed there or referred there by the DOE . . . to comply with IDEA's requirements." *Id.* at 7. Based on this arrangement, Colegio Girasol and its staff are purported to be state actors subject to the Fourteenth Amendment and state laws that require services to prevent negligence and abuse, thereby protecting the student's due process rights. *Id.* at 19-20.

      Plaintiffs argue that the failure of Colegio Girasol to adequately respond to the classroom spat, and the subsequent denial of educational services over disputed payments, represent a violation of these due process rights. *Id.* at 16-24. As a result, Plaintiffs maintain they have suffered both physical and emotional damages. *Id.* at 23-24. Plaintiffs assert Defendants are "directly responsible for the illegal actions that violated [D.A.L.P.'s] constitutional rights," because they were "executing Colegio Girasol's

official policy or were acting in accordance with a well settled and common custom or policy in Colegio Girasol" that deprived him of his constitutional rights. *Id.* at 21.

## III.    LEGAL STANDARD AND APPLICABLE LAW

### a.  Motion to Dismiss Standard under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When addressing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) courts should accept well-pleaded facts as true and draw reasonable inferences in plaintiff's favor. *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48-49 (1st Cir. 2009). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff is required to, present allegations that nudge claims from conceivable to plausible. *Id.* at 570; *see e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's analysis occurs in a two-step process. *Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662 (2009). First, the Court must accept as true all of the allegations contained in a complaint discarding legal conclusions, conclusory statements. *Iqbal*, at 678; *Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012) ("Any statements in the complaint that are either legal conclusions couched as facts or bare bones recitals of the elements of a cause of action are disregarded.").

Second, the Court must determine whether, based on all assertions not discarded in the first step, the complaint "states a plausible claim for relief." *Iqbal*, at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon

which relief may be granted or, instead, whether dismissal under Fed. R. Civ. P. 12(b)(6) is warranted. *Id*.

A complaint that rests on "bald assertions" and "unsupportable conclusions" will likely not survive a motion to dismiss. *See Alston v. Spiegel*, 988 F.3d 564, 573 (1st Cir. 2021) (internal quotations and citation omitted). Similarly, bare factual assertions as to the elements of the cause of action are inadequate as well. *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id*. at 596.

### b. Applicable Law under the IDEA

The IDEA "provides federal funds to assist states in educating children with disabilities and conditions such funding upon a State's compliance with extensive goals and procedures." *Roe v. Healey*, 78 F.4th 11, 15-16 (1st Cir. 2023) (cleaned up). To receive such funding, states must agree to guarantee to all children with disabilities a free and appropriate public education (commonly referred to as a FAPE). 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A). *Id*. A FAPE includes both "special education and related services" and is primarily delivered through an IEP. *Id*.

Parents must exhaust their state-provided remedies before filing a lawsuit in federal court alleging a violation of the IDEA. *Roe v. Healey*, 78 F.4th 11 at 15-16. "Parents must also exhaust their administrative remedies before filing a lawsuit under other statutes that protect the rights of children with disabilities if the relief sought is available under the IDEA." *Id*.

Importantly, only certain remedies are available to redress violations of the IDEA. *Roe*, at 16. Courts may award compensatory education and reimbursement of educational

expenses, both of which are considered equitable remedies under the IDEA. *Id.*; *Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 188–89 (1st Cir. 1993). Compensatory education consists of "future special education and related services to ensure or remedy a past denial of a FAPE." *Doucette v. Georgetown Pub. Schs.*, 936 F.3d 16, 32 (1st Cir. 2019).

When a plaintiff "attempt[s] to evade the limited remedial structure of the IDEA" a district court lacks "subject matter jurisdiction . . . until this exhaustion requirement has been met." *Dizio v. Manchester Essex Reg'l Sch. Dist.*, 18-cv-12489, 2019 WL 3797015, at *8 (D. Mass. Aug. 12, 2019) (citing *CBDE Pub. Sch. v. Massachusetts Bureau of Special Educ. Appeals*, 2012 WL 4482296, at *6). As the First Circuit has observed and most pertinent here:

> [p]laintiffs in the past have tried to get around the IDEA's limited remedies, as well as its other restrictions, by suing under other federal statutes, such as § 1983 . . . But our existing jurisprudence is clear that "where the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983—or any other federal statute for that matter—in an attempt to evade the limited remedial structure of the IDEA."

*Id.* (quoting *Díaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006)); *see also CBDE Pub. Sch. v. Massachusetts Bureau of Special Educ. Appeals*, 11-cv-10874, 2012 WL 4482296, at *6 (D. Mass. Sept. 27, 2012) (IDEA's exhaustion requirement "applies to actions brought under the IDEA . . . or any § 1983 claim based upon violations of a student's IDEA rights.").

This is true even if a plaintiff seeks money damages—a remedy not available under the IDEA—because a plaintiff's attempt to elude the confines of the IDEA by seeking money damages—does not transform their underlying IDEA claim. *See Dizio v. Manchester Essex Reg'l Sch. Dist.*, at *10 ("[e]xhaustion is required where plaintiffs seek money damages"); *Raymond v. Me. Sch. Admin. Dist. 6,* 18-cv-00379, 2019 U.S. Dist.

LEXIS 80868, at \*10 (D. Me. May 14, 2019) ("[p]laintiffs' demand for monetary damages under § 504 does not foreclose the exhaustion requirement under the IDEA."); *Tveter v. Derry Coop. Sch. Dist. SAU #10*, 2018 WL 3520827, at \*3 (D.N.H. July 20, 2018) ("duty to exhaust administrative remedies applies both to claims for injunctive relief and claims for damages even though the IDEA does not provide a private right to sue for damages."); *T.K. v. Town of Barnstable*, 2018 WL 3748166, at \*9 (D. Mass. Aug. 6, 2018) (same).[3]

In *Fry v. Napoleon Community Schools*, the Supreme Court of the United States established the framework for determining whether claims are subject to the IDEA's administrative exhaustion requirement. 580 U.S. 154 (2017). The Court mandated that:

> A court deciding whether § 1415(l) [of the IDEA] applies must examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education.

The Court clarified that "a suit must seek relief for the denial of a FAPE, because that is the only relief the IDEA makes available." *Id*. To determine if a suit "seeks" such relief, the Court instructed that "a court should look to the substance, or gravamen of the plaintiff's complaint." The "surface; the use or non-use of particular labels and terms" is not controlling. *See id*.

The *Fry* Court explicitly did not decide "a case in which a plaintiff, although charging the denial of a FAPE, seeks a form of remedy that an IDEA officer cannot give—[such as] money damages for resulting emotional injury." *Id*. at n. 8. "The First Circuit

---

[3]    The First Circuit has yet to address the implications of *Luna Perez v. Sturgis Pub. Sch*., 598 U.S. 142, 145 (2023). *See Doe v. Gavins*, 22-cv-10702, 2023 U.S. Dist. LEXIS 172621, at \*37 (D. Mass. Sep. 27, 2023). The aforementioned Supreme Court decision, which examines the extent to which "children with disabilities . . . [must] exhaust . . . administrative procedures under IDEA before seeking relief under other federal antidiscrimination statutes" will be discussed in tandem with *Li v. Revere Loc. Sch. Dist*., 21-cv-3422, 2023 WL 3302062 (6th Cir. May 8, 2023). This Sixth Circuit decision, rendered subsequent to *Luna Perez*, provides pertinent guidance on the issue at hand.

does not appear to have addressed the question of exhaustion and money damages posed by *Fry.*" *Dizio*, at 27.

In terms of analytical steps, the initial task for the Court is to evaluate whether the core issue in the Complaint is the denial of a FAPE. *See Thomas v. Abbeville High Sch.*, 23-cv-01432, 2024 U.S. Dist. LEXIS 31143, at *6-8 (W.D. La. Feb. 2, 2024) (citing *Lartigue v. Northside Indep. Sch. Dist.*, 86 F.4th 689, 693-94 (5th Cir. 2023)).

Next, the Court must determine the nature of the relief sought.  If the Complaint "does not concern the denial of a FAPE, then the plaintiff need not go through the IDEA's administrative hurdles." However, if the Complaint is based on a FAPE denial and seeks relief the IDEA can provide, exhaustion of administrative remedies is mandatory. *Id.*

In sum, Plaintiffs cannot sidestep the IDEA's limitations by simply slapping a price tag on claims that at its core concern the denial of a FAPE. *See Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 64 (1st Cir. 2002) (holding "that plaintiffs who bring an IDEA-based claim under 42 U.S.C. § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering . . . federal court."); *Raymond v. Maine Sch. Admin. Dist. 6*, 2019 WL 2110498, at *10; *Tveter v. Derry Coop. Sch. Dist. SAU #10*, 2018 WL 3520827, at *3; *T.K. v. Town of Barnstable*, 2018 WL 3748166, at *9.

## IV.  DISCUSSION

### a.  IDEA

i.    <u>The Gravamen of the Complaint: Denial of FAPE under the IDEA</u>

Defendants assert that Plaintiffs' Motion in Compliance to the Court's Show Cause Order "fails to establish that this case should not be dismissed for lack of subject-matter jurisdiction." (**ECF No. 124 at 2**). More specifically, Defendants assert that Plaintiffs are essentially seeking remedies for violations that fall squarely within the ambit of the IDEA. *Id*. at 2-4. They highlight that Colegio Girasol was providing educational services under an IEP approved by the Department of Education, which implicates the IDEA's procedural safeguards. *Id*. at 4. Accordingly, their Motion to Dismiss requests "Plaintiffs' Complaint should be dismissed . . . for lack of federal jurisdiction." (**ECF No. 116 at 1**). As Defendants contend Plaintiffs failed to exhaust the IDEA's administrative remedies. (**ECF No. 124 at 5**).

Conversely, Plaintiffs contend that their claims are not rooted in the IDEA because they seek damages under § 1983 for violations of substantive due process. They argue Defendants' "Motion to Dismiss should . . . be denied since the exhaustion requirements are not applicable to the facts" of the Complaint. (**ECF No. 118 at 14**). As will be discussed, this argument does not hold water. The "gravamen" of the Complaint, viewed in substance and not merely in form, is the denial of a FAPE as defined under the IDEA. (**ECF No. 49**); *Fry*, 580 U.S. at 170*; Fox v. Makin*, 22-cv-00251, 2024 WL 726204, at *4 (D. Me. Feb. 22, 2024).

As this Court previously analyzed in reference to Plaintiffs' Third-Party Complaint, *Lignos-López v. Servicios de Terapia Educativa Girasol, Inc.*, 22-cv-1419, 2024 WL

326788, at *5 (D.P.R. Jan. 29, 2024); the *Fry* test is used to decide if a plaintiff's action

with a school related nexus, as here, relates to issues other than the denial of a free

appropriate public education. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158–74 (2017).

If after the *Fry* test is applied and the suit is deemed to be about issues other than the

denial of a free appropriate public education, exhaustion of administrative remedies

under the IDEA is unnecessary. *Id*. at 168–69.

> The *Fry* test, asks:
>
> First, could the plaintiff have brought essentially the same claim if the
> alleged conduct had occurred at a public facility that was *not* a school—say,
> a public theater or library? And second, could an *adult* at the school—say,
> an employee or visitor—have pressed essentially the same grievance?

*Id*. at 171. (emphasis in original). If the answer to both is no, the claim falls under the

IDEA and exhaustion is needed *Id*. at 170-74. "The use (or non-use) of particular labels

and terms is not what matters. The inquiry, for example, does not ride on whether a

complaint includes (or, alternatively, omits) the precise words 'FAPE' or 'IEP.'" *Id*. at 169–

70.

> Applying this framework, the answer to both questions still remain in the negative.

Plaintiffs' Complaint, although framed under 42 U.S.C. § 1983 for substantive due process

violations, fundamentally revolves around the alleged denial of a FAPE. The Complaint

clearly states, "D.A.L.P. was enrolled at Colegio Girasol" beginning "August 2019 . . . until

December 2021, through the purchase of services arrangements [by the DOE] under the

*Individuals with Disabilities Educational Act*." (**ECF No. 49 at 6-7**) (emphasis added).

Based on the services arrangement, the Complaint asserts:

> Colegio Girasol as a private institution [was to] provide services in
> accordance with an Individualized Educational Program ("IEP") for
> D.A.L.P. . . . [s]ince [Colegio Girasol] . . . must guaranteed [sic] that services
> must be provided in accordance to laws and regulations to prevent not just

negligence but abuse by among others teachers and the community . . . they failed to act to protect the child before the attack by close supervision and prevention measures in [a] classroom of only 4 or 5 students with various levels of disability.

*Id.* at 19-20, 23. Moreover, the incident on December 14, 2021, is described as "another event in a prevalent environment of neglect and mismanagement by Colegio Girasol in neglecting not only the proper education of the student but also their continued physical and emotional well-being." *Id.* at 12-13. The Complaint ties D.A.L.P.'s injuries to the school's failure to "maintain a stable, knowledgeable, professional and committed faculty and school officials who could competently educate and supervise special needs children and well as [sic] detrimental educational practices." *Id.* at 25.

As for damages, the Complaint states, "D.A.L.P. suffered physical and emotional damages and consequences *as a result* [of] *Colegio Girasol's poor educational practices*, [and] lack of appropriate protocols to handle situations of violence at the school that should have been anticipated due to the characteristics and needs of the students serviced by the school." (emphasis added). *Id.* at 25.[4]

Simply put, Plaintiffs could not have brought the same claims against a non-school public facility, and an adult visitor to the school could not have pressed the same grievance. *See Fry*, at 168-171*; see also J.C. v. Greensburg-Salem Sch. Dist.*, 18-cv-1683, 2019 U.S. Dist. LEXIS 138239, at *29 (W.D. Pa. Aug. 15, 2019) ("neither a visitor to the school nor a non-parent adult would have standing to bring a claim based on the school's failure to provide supervision and support to a child."). The Complaint is replete with

---

[4]      *See also* (**ECF No. 49 at 25**) ("D.A.L.P. suffered lasting psychological and emotional damages and consequences because of Colegio Girasol's failure to maintain a stable, knowledgeable, professional and committed faculty and school officials who could competently educate and supervise special needs children and well as detrimental educational practices. This led to a result that instead of receiving an appropriate education as was required under applicable statutes.").

allegations related to D.A.L.P.'s IEP, including—but not limited to—the "school allowed their lack of oversight, supervision and control of the students and their personnel to cause physical damage to D.A.L.P." *Id.* at 26.[5]

Additionally, the Complaint alleges "Colegio Girasol's promotion materials indicate that it provides services to children with [behavioral disorders] which suggest that they can or should manage behaviors such as those described in relation to D.A.L.P. . . . that could significantly *impact the educational process*." *Id.* at 8. (emphasis added).

These allegations demonstrate that the core of D.A.L.P.'s Complaint is that the school failed to provide him with a FAPE in a safe and appropriate educational environment as mandated by his IEP. *See c.f.*, *B.D. v. Eldred Cent. Sch. Dist.*, 661 F. Supp. 3d 299 (S.D.N.Y. 2023) (finding school did not deny the student a FAPE thereby rejecting parents' request for tuition reimbursement under the IDEA where school took significant actions to protect a special education student "physically assaulted by another student," such as preventative measures, separating offenders, and monitoring common areas.).

---

[5]     Plaintiffs argue that the *Fry* test establishes no exhaustion was required, arguing a claim for "negligence . . . could have taken place at a library, summer camp, hospital or other public institutions." (**ECF No. 118 at 10-11**). While this assertion is theoretically accurate, Plaintiffs' claims of negligence and constitutional breaches were not submitted in isolation. Instead, Plaintiffs frame their claims based on Defendants' "statutory mandate to protect the child, including health concerns." (**ECF No. 49 at 23**).
        They claim the December 14 incident was preventable as "student groups consisted of only 4 to 5 students, with special education needs . . . could have required sufficient competent personnel to prevent injuries. Not having . . . appropriate protocols available was not just an invitation, but the facilitation and encouragement of an, otherwise, preventable incident to occur." *Id.*
        Furthermore, Plaintiffs claim that by failing to notify parents and address D.A.L.P.'s conditions, the school "adopted a position of absolute power over the well-being of a child." *Id.* at 24. They contend damages resulted directly from events under the school's "absolute control" and would not have occurred if D.A.L.P. was not "enrolled at Colegio Girasol." *Id.*
        Contrary to Plaintiffs' assertion that no exhaustion was required because their claims could have been brought against a library or other public institution, the aforementioned allegations make clear that is not the case. Their claims are tied to the educational context and to what Plaintiffs categorize as Defendants' position of "control" over students including D.A.L.P.

Put differently, Plaintiffs are contending Defendants failed to provide D.A.L.P. a FAPE because they dispute the educational program offered by Colegio Girasol enabled the child an opportunity "reasonably calculated to enable the child to make progress appropriate in light of the child's circumstance." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). In other words, Plaintiffs are effectively contending that Colegio Girasol's failure to properly supervise or prevent the December 14 classroom fight and disruption in effect prevented D.A.L.P. from having an environment conducive to fostering his education. This at bottom, is a denial of a FAPE. The "periphrastic circumlocutions" sprinkled throughout the Complaint to the contrary does not change that the overwhelming substance of their Complaint are claims of a deficient FAPE. *Alston v. Speigel (In re Ames)*, 993 F.3d 27, 35 n.3 (1st Cir. 2021).

Plaintiffs cannot camouflage their IDEA claim "in other garb" when the fundamental nature of the claim asserts a denial of FAPE under the IDEA. *See Dizio v. Manchester Essex Reg'l Sch. Dist.*, 20-cv-11859, 2022 WL 974050, at *5 (D. Mass. Mar. 31, 2022) (quoting *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 39 (1st Cir. 2012) (explaining that "plaintiffs cannot disguise an IDEA claim in other garb '[w]here the essence of the claim is one stated under the IDEA for denial of FAPE.'"). The exhaustion of due process administrative proceedings serves an important function in resolving IDEA disputes, and the Court will not allow parties to circumvent them through "artful pleading." *See Fry*, at 155; *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 64 (1st Cir. 2002) (explaining that the IDEA's exhaustion requirement "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and

promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children").

ii.    Relief Sought is Compensatory Education

Despite Plaintiffs' assertion that they seek only compensatory damages, the Court sees through this guise. As will be explained, the Court finds that the relief they are truly seeking—compensatory education—falls squarely within the purview of the IDEA, necessitating administrative exhaustion.

The Complaint states that on December 14, 2021, Plaintiffs were informed that D.A.L.P. would "not be receiving grades, nor allowed to take the semester final exams, due to a delay in payments." (**ECF No. 49 at 7**). Similarly, the Complaint asserts D.A.L.P. was barred from returning to school "due to alleged lack of payment, not for misbehavior," and "no final grades would be provided due to missing payments due to the DOE delay in forwarding payments." *Id*. at 12, 14. Moreover, the Complaint states that "payment for the services D.A.L.P. was receiving at Colegio Girasol were made by the DOE through reimbursement," and that these payments "were usually in arrears for up to several months." *Id*. at 7. Yet, Plaintiffs argue that exhaustion was not required because they seek only compensatory damages, a remedy unavailable under the IDEA. (**ECF No. 119 at 10-12**).

As mentioned, the IDEA provides specific remedies for violations, including compensatory education and reimbursement of educational expenses. *Roe*, at 16. These are equitable remedies, not damages. *Id*. Compensatory education aims to "ensure or remedy a past denial of a FAPE." *Doucette v. Georgetown Pub. Schs*., 936 F.3d 16 at 32. Tort-like general damages are not available under the IDEA. *Roe*, at 16. Ultimately, "what

matters is the crux . . . of the plaintiff's complaint," not the specific relief requested. *Fry*, at 175. The Court must "look to the substance of the remedy sought rather than the label placed on that remedy." *Fox v. Makin*, 2024 WL 726204, at *4; *see also Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 132 (3d Cir. 2017) (a magic words approach will not do).

Here, the allegations regarding payment delays, withholding of grades, and their direct impact on D.A.L.P.'s education demonstrate the relief they seek is compensatory education to "remedy a past denial of a FAPE." *See Doucette v. Georgetown Pub. Schs.*, at 32; *see also Zachary J. v. Colonial Sch. Dist.*, 22-cv-1509, 2024 U.S. App. LEXIS 2187, at *13 (3d Cir. Jan. 31, 2024) ("[g]rades are nonetheless important in further assessing the success of an IEP . . . the grading and advancement system . . . constitutes an important factor in determining educational benefit."); *Reid ex rel. Reid v. District of Columbia*, 365 U.S. App. D.C. 234, 236 (2005) (compensatory education should "aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA").

Plaintiffs' argument that they are exempt from the IDEA exhaustion requirement simply because they seek monetary damages is unavailing, as compensatory education, which can take the form of an award with a dollar figure attached, is designed to "place disabled children in the same position they would have occupied but for the school district's violations of IDEA.". *See S. B. v. Bureau of Special Educ. Appeals*, 22-cv-10056, 2024 WL 1333578, at *2 (D. Mass. Mar. 28, 2024) (citing *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003) ("[a]wards of compensatory education and equitable remedies that involve the payment of money, such as reimbursements to parents for expenses incurred on private educational services to which their child was later found to have been entitled, remain available."); *see also Heather D. v. Northampton Area Sch.*

*Dist.*, 511 F. Supp. 2d 549, 562 (E.D. Pa. 2007) (awarding 2,428 hours of compensatory education at $75 an hour, creating a $182,100 compensatory education fund and "reasonable legal fees under the IDEA.")[6]

In *Li v. Revere Loc. Sch. Dist.*, the Sixth Circuit addressed a matter where the type of relief sought was unclear. 21-cv-3422, 2023 WL 3302062, at *13 (6th Cir. May 8, 2023). There, the plaintiffs sought "compensatory damages," however, in the "body" of the complaint, the plaintiffs stated "that [the] [d]efendants' actions 'deprived [the plaintiff] of the right to a [FAPE] under Section 504 and the ADA and as a result of such actions, the [plaintiffs] 'suffered damages, continue to suffer extreme emotional distress, [and] the loss of educational opportunities.'" *Id.* The court noted that the complaint was unclear about the specific form of relief sought, whether it was compensatory damages (which are not available under the IDEA and thus not subject to its exhaustion requirement) or other forms of relief like compensatory education, reimbursement, or equitable relief (which are available under the IDEA and subject to exhaustion). *Id.*

The *Li* Court distinguished its case from the Supreme Court decision in *Luna-Perez v. Sturgis Public Schools*, 598 U.S. 142. The *Li* Court emphasized that in *Luna-Perez*, the plaintiffs had unambiguously sought compensatory damages, unlike the situation in *Li*. *Id.* (citing *Luna-Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 145 (2023). As the *Li* Court noted, in *Luna-Perez*, "the plaintiff fully resolved his administrative complaint under the IDEA, obtained all forward-looking equitable relief he requested (including additional schooling), and later, in an independent action, unambiguously sought 'backward-looking

---

[6]     Of note, here Plaintiffs also seek "reasonable attorneys' fees" which is available under the IDEA. (**ECF No. 49 at 28**). *See J.S. v. Westerly Sch. Dist.*, 910 F.3d 4, 9 (1st Cir. 2018) ("[t]he IDEA permits a court to award reasonable attorneys' fees.")

relief in the form of compensatory damages.'" *Li v. Revere Loc. Sch. Dist.*, 2023 WL 3302062, at \*13 (quoting *Luna-Perez* at 145–46). As a result of the lack of clarity in the *Li* complaint, the court was skeptical about whether their claims were comparable to those in *Luna-Perez* and whether they were seeking relief not available under the IDEA, which would exempt them from the exhaustion requirement. *Id.*

Plaintiffs erroneously believe *Luna-Perez* definitively resolves the case at bar in their favor thereby excusing their failure to exhaust. However, Plaintiffs' reliance on *Luna-Perez* is off the mark in two respects. First *Luna-Perez* involves facts that are not readily analogous to the instinct action. Our Plaintiffs did not resolve their "administrative complaint under the IDEA [and] obtain[] all forward-looking equitable relief," "including additional schooling" as the plaintiffs in *Luna-Perez. See Li v. Revere Loc. Sch. Dist.* 2023 WL 3302062, at \*12-14; *see also T.Z. v. Tippecanoe Sch. Corp.*, 22-cv-0016, 2023 U.S. Dist. LEXIS 12581, at \*21 (N.D. Ind. Jan. 25, 2023) (highlighting "unlike the child in *Luna-Perez*, [the minor plaintiff] has never made a claim under the IDEA"). Second, and more importantly, the question before the Supreme Court in *Luna-Perez* was to what extent must "children with disabilities . . . exhaust . . . administrative procedures under IDEA before seeking relief under other federal antidiscrimination statutes, such as the Americans with Disabilities Act of 1990." ("ADA"). *Luna-Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 144 (2023).

The answer to that inquiry is not before this Court as our Plaintiffs are not alleging violations of the ADA or similar anti-discrimination statutes. *See Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 515 (5th Cir. 2024) (explaining the current state of the law in light of *Fry* and *Luna-Perez* in a suit against a school for alleged violations of the ADA or similar anti-discrimination statutes, excuses a plaintiff from the IDEA's

administrative hurdles "if the complaint is predicated on a FAPE denial [and] if the relief sought is not one that the IDEA can provide, such as compensatory damages.").

More apt to the case before the Court is *Li*. And like *Li*, the relief sought by Plaintiffs here lacks clarity. Their Complaint admittedly seeks prospective relief (covered by the IDEA), as Plaintiffs request "present, past, and *future* damages to D.A.L.P. . . . in a sum not less than $4,000,000.00 for actual and *future* consequences" for the emotional and physical harm suffered. (**ECF No. 49 at 27**) (emphasis added). Similarly, they request "present, past, and *future* damages to D.A.L.P.'s parents . . . in a sum not less than $1,000,000.00 each, for actual and *future* consequences." *Id*. at 28 (emphasis added).

However, Plaintiffs have failed to parse out which portions of these damages relate to past, present, or future harm. Like *Li*, the Court here is more than skeptical whether Plaintiffs seek relief not available under the IDEA.

The Court acknowledges the appeal of a rule that bypasses the exhaustion requirement by merely seeking damages, given that "compensatory damages are not available in IDEA proceedings." *See Novit v. Metro. Sch. Dist. of Warren Twp*., 21-cv-2168, 2023 U.S. Dist. LEXIS 102, at *38-39 (S.D. Ind. Jan. 3, 2023) ("after closely examining the theory behind the grievance" the court dismissed plaintiff's § 1983, ADA, and IDEA action for failure to exhaust, finding even if the complaint did not "explicitly concern the denial of a FAPE, application of the *Fry* test would result in a finding that the gravamen of the . . . complaint concerns the denial of a FAPE" and thus exhaustion was required.)

But this approach ignores the central role of exhaustion in the IDEA framework. *Id*. "Exhaustion serves Congress' intent that educational experts—not the courts—address deficiencies" in the implementation of a student's IEP. *Id*. Reading the requirement any

other way would do exactly what Congress and *Fry* told us not to do—let artful pleading trump substance. *Id.* (citing S. Rep. No. 99-112, at 15 (noting that § 1415(l) should not be interpreted to let parents "circumvent the [IDEA's] due process procedures and protections"); *Fry*, 137 S. Ct. at 755.).

Plaintiffs' failure to distinguish between past, present, and future harm in their damages claim is critical, as the burden to establish subject matter jurisdiction rests with Plaintiff, thereby undermining their attempt to bypass the IDEA's exhaustion requirement. *See Bearbones, Inc. v. Peerless Indem. Ins. Co.*, 936 F.3d 12, 16 (1st Cir. 2019) ("the party invoking the jurisdiction of a federal court carries the burden of proving its existence."). This lack of distinction makes their claim for monetary damages indistinguishable from the compensatory education relief available under the IDEA. *See E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 452 (2d Cir. 2014) (compensatory education is a form of "prospective equitable relief" as a remedy for prior educational deprivations); *see also Li*, at *13 (noting that forward-looking relief is available under the IDEA while backward-looking damages is not).

The Court will not attempt to deconstruct what portion of the sought damages corresponds to "present, past, and future harm," as Plaintiffs have failed to meet their burden of establishing subject matter jurisdiction by clearly distinguishing between backward-looking and forward-looking damages. (**ECF No. 49 at 27-28**); *Valentin-Marrero*, 29 F.4th 45, at 53; *see also Smith v. Kalamazoo Pub. Sch.*, 23-cv-0736, 2023 U.S. Dist. LEXIS 235229, at *9 (W.D. Mich. Nov. 21, 2023) ("backward-looking relief is unavailable under the IDEA and therefore not subject to its exhaustion requirement.").

Importantly, whereas here, "the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial

opportunity to ascertain and alleviate the alleged problem.*" See Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cnty. of Denver, Colo*., 233 F.3d 1268, 1274 (10th Cir. 2000); *George v. Davis Sch. Dist*. 23-cv-00139, 2023 U.S. Dist. LEXIS 137409, at *19 (D. Utah Aug. 4, 2023) (post *Luna-Perez* decision noting the same).

Moreover, a closer examination of the Complaint reveals that Plaintiffs' allegations of harm, despite being labeled as "emotional damages," offers nothing more than conclusory allegations. (**ECF No. 49 at 11-14, 16, 22, 24-27**); *see Manuel v. City of Bangor*, 09-cv-0339, 2010 U.S. Dist. LEXIS 917, at *15 (D. Me. Jan. 5, 2010). Accordingly, Plaintiffs have failed to allege sufficient facts to support their claims they suffered damages as a result of Defendants' purported conduct. *See Valentín v. Gobierno De Puerto Rico*, 01-cv-1247, 2002 WL 743517, at *1 (D.P.R. Apr. 16, 2002) ("damage claims against government officials cannot be founded upon conclusory, vague, or general allegations but must present facts that show the existence of the asserted constitutional rights violation recited in the complaint and what each defendant did in violation of such right"); *see also Serrano v. Nicholson Nursery*, Inc., 844 F. Supp. 73, 75 (D.P.R. 1994) (dismissing under R. 12(h), the court found that the plaintiffs failed to prove emotional damages. They provided no details on the "severity of the pain, its duration, and its emotional consequences" and "offered no medical evidence that they had suffered emotional distress and made only conclusory allegations at best.").

As the Court's analysis reveals, the substance of Plaintiffs' allegations, rather than their labeling and "artful pleading" determines the nature of the claim. *See Novit v. Metro. Sch. Dist. of Warren Twp*., 2023 U.S. Dist. LEXIS 102, at *38-39 (recognizing "the facial attraction to a rule that seeking damages alone overcomes the exhaustion requirement" however, such a rule would let "artful pleading trump substance.").

Considering the nature of Plaintiffs' grievances, which in effect are IDEA claims, and the lack of specificity regarding damages, the Court concludes that Plaintiffs' claims are subject to the exhaustion requirement of the IDEA. *See Ms. M. ex rel. K.M. v. Portland Sch. Comm.*, 360 F.3d 267, 273-74 (1st Cir. 2004) (finding plaintiff's attempt to "refashion her claim for tuition reimbursement as a claim for compensatory education stemming from [an] allegedly deficient education" in an effort to avoid the consequences of failing to follow IDEA procedure unavailing, as "compensatory education entitles recipient to further services, in compensation for past deprivations."). Given that Plaintiffs do not dispute that they failed to exhaust administrative remedies under the IDEA (**ECF No. 119 at 10**), their failure to do so divests this Court of subject matter jurisdiction, and their Complaint must be dismissed. *See Doucette v. Georgetown Pub. Schs.*, at 32; *Dizio*, at *11.

### b. Substantive Due Process under the Fourteenth Amendment

#### i.    Court's Inherent Authority for Sua Sponte Dismissal

Even if the Court had subject matter jurisdiction to entertain Plaintiff's purported claims, Defendants do move for dismissal stating, "Plaintiffs have failed to state a claim under 42 U.S.C. § 1983", thereby putting Plaintiffs on notice of arguable deficiencies in their substantive due process claims. (**ECF No. 116 at 4**).[7]

Notwithstanding Defendants' Motion to Dismiss leaves much to be desired by way of argumentation, this Court also has inherent authority to manage and review a case and dismiss a complaint sua sponte for failure to state a claim. *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002); *Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R.*, 144 F.3d

---

[7]    Defendants also move for any "surviving State Claims under Puerto Rico Torts Law [be] dismissed without prejudice." (**ECF No. 116 at 4**).

7, 13-14 (1st Cir. 1998); *see also Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016) (dismissing claim sua sponte under Federal Rule 12(b)(6) "using the same standards applied as if it had been a motion to dismiss from the opposing party.").

Accordingly, in evaluating Plaintiffs' allegations according to the standards to plausibly allege a Fourteenth Amendment violation, the Court finds Plaintiffs' claims are insufficiently pled to move past the motion to dismiss stage. *Cooper v. Hagelberg*, 20-cv-40035, 2022 U.S. Dist. LEXIS 246975, at *23 n.13 (D. Mass. Mar. 9, 2022) (recommending sua sponte dismissal of constitutional claims that failed plausibility standard, despite defendant's motion to dismiss not putting plaintiff "on notice of any arguable deficiencies" in all claims.)

The Court is cognizant dismissing sua sponte for failure to state a claim is "strong medicine and should be dispensed sparingly." *González-González v. United States*, 257 F.3d 31, 33 (1st Cir. 2001). A sua sponte dismissal is appropriate when "the complaint is too vague and bare-boned and does not set forth sufficient factual allegations to allow the court to 'intuit the correct cause of action, even if it was imperfectly pled.'" *Martell-Rodríguez v. Ramos-López*, 16-cv-2925, 2016 U.S. Dist. LEXIS 176668, at *9 (D.P.R. Dec. 21, 2016) (quoting *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997)); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (explaining that sua sponte dismissal is warranted only if a complaint is "based on an indisputably meritless legal theory" or is "clearly baseless"); *Rolle v. Berkowitz*, 2004 U.S. Dist. LEXIS 2035, 2004 WL 287678, *1 (S.D.N.Y. 2004) (sua sponte dismissal is warranted where the claims presented no arguably meritorious issue to consider).

Still, dismissing a complaint sua sponte for failure to state a claim requires the parties have notice and an opportunity to amend or otherwise respond. *See Chute v.*

*Walker*, 281 F.3d 314, 318–320 (1st Cir. 2002) (sua sponte dismissals under 12(b)(6) are appropriate in limited circumstances, but sua sponte dismissal was erroneous when plaintiff was not afforded notice and opportunity to amend complaint or otherwise respond).

Here, Defendants filed a Motion to Dismiss for failure to state a claim, Plaintiff had notice of the Motion, an opportunity to amend their already fifth Amended Complaint, and did respond to Defendants' Motion. (**ECF No. 118**).[8] *See González-González v. United States*, 257 F.3d 31 at 36 ("If a defendant files a motion to dismiss for failure to state a claim . . . the plaintiff, as a practical matter, has notice of the motion and an opportunity to amend the complaint.").

The First Circuit has cautioned against the misuse of § 1983, a concern that resonates here, where Plaintiffs seem to be sidestepping the IDEA's exhaustion requirement by dressing up their claims as constitutional violations. *See Dewey v. Univ. of N.H.*, 694 F.2d 1, 3 (1st Cir. 1982) (warning § 1983 is subject to potential "misuse" by plaintiffs). Even setting aside the Court's skepticism, even if Plaintiffs' Complaint is viewed purely as a § 1983 action for constitutional violations (plus state law claims), it still fails to meet the *Twombly* and *Iqbal* standards.

ii.    Legal Framework for § 1983 and Due Process Claims

As is well established, § 1983 creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. *Cruz-Erazo v. Rivera-*

---

[8]    Plaintiff has amended their Complaint five times throughout this litigation and has a total of six filed complaints. (**ECF Nos. 1, 7, 13, 20, 28, 36**).

*Montañez*, 212 F.3d 617, 621–23 (1st Cir. 2000). The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Substantive due process precedents demand that [the Court] first determine whether the defendants' conduct 'shocks the conscience. *Doucette v. Jacobs*, 106 F.4th 156, 171 (1st Cir. 2024).

The test of whether conduct "shocks the conscious" "is an extremely demanding one . . . ." *Id.* Only when government action "was infected or driven by something much worse—more blameworthy—then [for example] mere negligence" will the Court find a substantive due process violation. *Id.* (internal citation and quotations omitted). The Due Process Clause does not impose liability every time someone with state authority causes harm; otherwise, "the Constitution would be downgraded to a font of tort law." *McConkie v. Nichols*, 446 F.3d 258, 260 (1st Cir. 2006) (cleaned up). Conceptually, the "shock the conscience" standard "does not replicate, or even draw upon, negligence law." *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). Negligent conduct is "categorically insufficient to shock the conscience." *Id.*

Schools may have a duty under the Due Process Clause to protect students when faced with specific known hazards or perils, particularly when it comes to students who are "manifestly unable to look after themselves," such as "very young children." *Doucette v. Jacobs*, 106 F.4th 156 at 171. However, "to shock the conscience, only a case with truly 'pungent' or 'outrageous' facts could support a constitutional claim that a school acted with deliberate indifference." *Id.* (quoting *Hasenfus v. LaJeunesse*, 175 F.3d 68, 71-72 (1st Cir. 1999)).

Deliberate indifference can amount to conscious shocking behavior if the state actor had time to reflect and make rational decisions. *See Irish v. Fowler*, 979 F.3d 65,

73-74 (1st Cir. 2020). However, the plaintiff "must, at a bare minimum, demonstrate that [the defendant] actually knew of a substantial risk of serious harm … and disregarded that risk." *Id.*

Here, Plaintiffs' Complaint, viewed solely through the lens of an alleged constitutional injury, claims defendants, acting as state actors providing public education services, violated D.A.L.P.'s constitutional rights through deliberate indifference and creating a state-created danger. (**ECF No. 49**). Nevertheless, because the touchstone of a substantive due process violation is conduct that shocks the conscious, whereas here, the record contains no alleged act "so extreme, egregious, or outrageously offensive as to shock the contemporary conscience" Plaintiffs' Complaint must be dismissed for failure to state a claim. *See DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005)); *see also González-Droz v. González-Colón*, 660 F.3d 1, 16 (1st Cir. 2011) (cleaned up) ("[t]o sink to [the] level" of conscience-shocking, the challenged conduct must be "truly outrageous, uncivilized, and intolerable.")

Viewed in the "light most favorable" to Plaintiffs, the Complaint could conceivably be read to allege negligent conduct—however it does not describe the type of egregious behavior required to shock the conscience. *Carrero-Ojeda v. Autoridad De Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014) For example, Plaintiffs allege that "Colegio Girasol, and all the codefendants, failure to provide medical and emotional assistance or to promptly and timely notifying the parents of D.A.L.P. so that they could assist in timely alleviating and taking care of D.A.L.P. to minimize damages." (**ECF No. 49 at 25**). While potentially negligent, these allegations do not rise to the extremely high level of "conscience-shocking". *See Doucette v. Jacobs*, at 176–77 (1st Cir. 2024) (finding although the school's conduct may have been negligent at times, it did not demonstrate

the egregious or outrageous behavior necessary to shock the conscience and violate substantive due process rights, based on temporary lapses in providing necessary equipment, staff support, and inadequate medical supervision for a student who suffered from seizures).

> To further drive this point home, Plaintiffs allege that:

> It remains unclear what exactly took place [on] December 14, 2021, . . . except that D.A.L.P. was injured by someone at Colegio Girasol, there was a lack of supervision, . . . and the school officials were not clear as to what happened, how did they handle it [sic] . . . The assault on December 14, 2021, was, therefore, a direct consequence of an atmosphere in which, **as yet fully ascertained conditions** [sic] at the school caused, at least, a significant turn-over of personnel, . . . resulted [in] special need students under their care . . . subject to neglect and/or abuse by other students and, **probably**, by action or omission, the school's personnel.

(**ECF No. 49 at 13-15**) (emphasis added). Again, while these allegations *may* suggest negligence, they fall well short of the "truly outrageous, uncivilized, and intolerable" conduct required to shock the conscience and therefore fails to state a substantive due process claim.[9] *See e.g., Roe v. Healey*, 78 F.4th 11 (1st Cir. 2023) (failed to show that actions of school districts and others shocked the conscience, as required to maintain substantive due process claim); *Doe v. Dennis-Yarmouth Reg'l Sch. Dist.*, 578 F. Supp. 3d 164 (D. Mass. 2022) (Parents could not establish that school had an affirmative duty to protect student under substantive due process); *Roe v. Baker*, 624 F. Supp. 3d 52 (D. Mass. 2022) (school department's actions did not shock the conscience under substantive

---

[9]     Additionally, Plaintiffs' Complaint offers labels such as "state-created danger", "special relationship", and "callous indifference" in an attempt to substantiate their claims. (**ECF No. 49 at 20-23**). However, Plaintiffs' formulaic prose offers nothing more than these boilerplate labels and is thus "too vague and bare boned" to set forth a Fourteenth Amendment claim. *See Martell-Rodríguez v. Ramos-López*, 2016 U.S. Dist. LEXIS 176668, at *9; *see also Pitta v. Medeiros*, 22-cv-11641, 2023 WL 3572391, at *8 (D. Mass. May 19, 2023), *aff'd*, 90 F.4th 11 (1st Cir. 2024), *cert. denied*, 23-1090, 2024 WL 2883765 (U.S. June 10, 2024) (dismissing in part, § 1983 action against school under 12(b)(6) because the complaint's Fourteenth Amendment claims did not provide detail on "how [] due process rights had been infringed" where student's father also claimed violations of the First Amendment in relation to child's IEP meeting.)

due process standard); *Doucette v. Jacobs*, at 171–77, (noting incident where special education student attended a field trip without an assigned nurse as "troubling" because the record did not indicate it happened again, that incident did not establish "deliberate indifference," that the defendant "actually knew of a substantial risk of serious harm" but "disregarded that risk" to "constitute conscience-shocking activity;"); *Tveter v. Derry Coop. Sch. Dist. SAU #10*, at *8–9 (school's decision to house a student with known bullies did not meet the shock the conscience standard for a substantive due process violation); *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279 (D. Mass. 2017) (assault of student by teammates at a school-sponsored event did not violate substantive due process right to bodily integrity); *Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208 (D. Mass. 2015) (failed to state a claim for violations of substantive due process).

Given the lack of factual allegations that plausibly plead conduct "so extreme, egregious, or outrageously offensive as to shock the contemporary conscience," the Court dismisses Plaintiff's Complaint sua sponte for failure to state a claim. *See DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005); *see e.g.*, *S. B. v. Bureau of Special Educ. Appeals*, 22-cv-10056, 2024 WL 1333578, at *6 (D. Mass. Mar. 28, 2024) (granting motion to dismiss, finding complaint lacked specific allegations to support due process claim and failed to establish subject matter jurisdiction. The court also dismissed, sua sponte, all claims against defendants determining that plaintiff's IDEA claim lacked merit.); *Martell-Rodríguez v. Ramos-López*, 16-cv-2925, 2016 U.S. Dist. LEXIS 176668, at *8-9 (D.P.R. Dec. 21, 2016) (quoting *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997)) (dismissing 1983 action sua sponte because "complaint is simply too vague and

bare-boned, and does not set forth sufficient factual allegations in order to allow this court

to 'intuit the correct cause of action, even if it was imperfectly pled.'")[10]

## V.    CONCLUSION

In sum, the Court **GRANTS** Defendants' Motion to Dismiss due to Plaintiffs'

failure to exhaust administrative remedies as mandated by the IDEA. (**ECF No. 116**).

Despite attempts to recast their grievances under 42 U.S.C. § 1983 for substantive due

process violations and to seek monetary damages, Plaintiffs' claims fundamentally

concern the denial of a Free Appropriate Public Education under the IDEA. Accordingly,

without having pursued the requisite administrative remedies, this Court lacks

---

[10]     Plaintiffs' § 1983 action also fails under *Monell v. Dep't of Soc. Servs.* 436 U.S. 658, 694-95 (1978). To state a § 1983 claim against a municipality, plaintiffs must show that "the municipality itself causes the constitutional violation at issue," and not through *respondeat superior* or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 at 694-95. This requires demonstrating the existence of a policy or custom and a "direct causal link" between that policy and the alleged constitutional deprivation. *Harris*, 489 U.S. at 385; *Monell*, 436 U.S. at 694. Plaintiffs' Complaint lacks specific factual allegations of a widespread practice amounting to de facto policy or deliberate indifference by policymakers. *See Doe v. Town of Wayland*, 179 F. Supp. 3d 155, 171–72 (D. Mass. 2016); *see also Tait v. Lake Region Sch. Dist. (M.S.A.D. #61)*, 23-cv-00329, 2024 BL 271993, at *9 (D. Me. Aug. 7, 2024) (finding absent from complaint alleging substantive due process claim were "facts to suggest that the District ever disregarded unlawful conduct by chaperones in the past, let alone unlawful conduct that was persistent and widespread." Instead, the actions alleged show the school district's willingness to face a foreseeable risk of harm to children under their supervision yet those actions "are not a policy of deliberate indifference to emergencies or constitutional violations.") Moreover, the Complaint falls short of demonstrating a widespread practice, custom, de facto policy or deliberate indifference by policymakers that is the "moving force" behind the alleged constitutional violations. *See Monell*, at 694 (policy must be the "moving force [behind] the constitutional violation.") Emblematic of the Complaint's insufficiently pled allegations are factually threadbare recitals such as:

> "the school . . . directly responsible for the illegal actions that violated constitutional rights but were also executing Colegio Girasol's official policy or were acting in accordance with a well settled and common custom or policy in Colegio Girasol" and "Colegio Girasol can be liable as an entity under 1983 since violations against D.A.L.P took place due to an official policy or custom of the school."

(**ECF No. 49 at 20-23**). These, among other unadorned allegations—taken as a whole— are precisely the type of "formulaic recitation of the elements of a cause of action" that are insufficient to state a claim under *Twombly*, 550 U.S. 544, 555 (2007). Accordingly, viewed as a § 1983 *Monell* claim, Plaintiffs' Complaint must also be dismissed.

jurisdiction to hear the case and therefore Plaintiffs' federal claims must be **DISMISSED**.

Moreover, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, as there is no independent basis for federal jurisdiction. *Signs for Jesus v. Town of Pembroke, NH*, 977 F.3d 93, 114 (1st Cir. 2020) (reiterating that a "district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367.") Accordingly, Plaintiffs' Fifth Amended Complaint (**ECF No. 49**) is **DISMISSED** *without prejudice* and all other pending motions are rendered *moot*.[11]

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of August, 2024.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**

---

[11]     The Court expresses no opinion as to whether plaintiffs may pursue the state law claims against Defendants in the courts of the Commonwealth of Puerto Rico, as well as to the validity, if any, of those claims in the local forum. *See Vargas-Torres v. Toledo-Dávila*, 07-cv-2002, 2008 WL 1984057, at *10 (D.P.R. Apr. 30, 2008).