IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Alexander Rafael Lignos López, et al.<br><br>vs.<br><br>Servicios de Terapia Educativa Girasol, Inc., et al. | CIVIL NO.  3:22-cv-01419 (MAJ)<br><br>DENIAL OF CIVIL RIGHTS, DAMAGES DAMAGES UNDER STATE LAW<br><br>JURY TRIAL DEMANDED |

## **MOTION FOR RECONSIDERATION UNDER RULE 59(e)  OF THE RULES OF CIVIL PROCEDURE AS TO JUDGMENT AND OPINION AND ORDER DISMISSING THE COMPLAINT.**

TO THE HONORABLE COURT:

COME NOW, Plaintiffs, Alexander Rafael Lignos López, Vanessa Padilla Muñoz, personally and on behalf of their minor son D.A.L.P. (hereinafter, "Plaintiffs" or "parents"), through the undersigned attorney, and very respectfully state and pray as follows:

I

On **August 26, 2024**, this Honorable Court issued a Judgment, ECF No. 140, "[i]n accordance with the Opinion and Order entered on August 23, 2024 (ECF. No. 139)," dismissing the instant action, without prejudice, in its entirety.

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration, rather courts treat motions to modify its earlier disposition of the case as motions under Federal Rule of Civil Procedure ("Fed. R. Civ. P.")  59(e), under which the Judgement could be altered if there is a manifest error of law, newly discovered evidence or in certain other narrow situations. *FDIC v. Mapfre Praico Ins. Co. of P.R.*, 638 F. Supp. 3d 102, 106-107 (D.P.R. 2022). "[A] motion for reconsideration should be granted if the court 'has patently misunderstood a party … or has made an error not of reasoning but apprehension.'" *Id*.

citing *Ruiz Rivera v. Pfizer Pharms*., LLC, 521 F. 3d 76, 82 (1ˢᵗ Cir. 2008). In deciding such motions, the court has considerable discretion, *Id.* citing *Venegas-Hernandez v. Sonolux Records*, 370 F. 3d 183, 190 (1ˢᵗ Cir. 2004).

Rule 59(e) of the Fed. R. Civ. P. states that a motion to alter or amend a judgment must be filed no later than 28 days after the entry of <u>judgment</u>. In the instant case this term expires on Monday, **<u>September 23, 2024</u>**.[1] A timely Rule 59(e) motion tolls the running of notice of appeal period ("30 days after entry of judgment or order appealed from"), which will run again from the entry of the order disposing of the motion.  Rule 4(a)(4)(A) of the Federal Rules of Appellate Procedure, see *Roy v. Canadian Pac. Ry. Co.*, 999 F. 3d 72, 77 (1ˢᵗ Cir. 2021)

Plaintiffs respectfully posit that the Honorable Court misapprehended the nature of the claims in the Fifth Amended Complaint leading to a manifest error of law. See *FDIC v. Mapfre Praico Ins. Co. of P.R.*, 638 F. Supp. 3d at 106-107; *Ruiz Rivera v. Pfizer Pharms*., LLC, 521 F. 3d at 82.

II

 The Honorable Court statements explaining the dismissal on the complaint in the Opinion and Order, upon which the Judgment is based, is divided in two parts, the part that concerns exhaustion of administrative remedies under the IDEA, and the dismissal for failure to state a claim under 42 U.S.C. § 1983. This last argument is largely dependent on the Court's decision to make a *sua sponte* dismissal of the case.

Before entering to discuss these two parts, it must be pointed out that the court bases its decision, as to the two parts, on the Motion to Dismiss at ECF No. 116 ("Motion to Dismiss"). This motion, as the court admits, "leaves much to be desired by way of argumentation." Opinion

---

[1] Rule

and Order, ECF No. 139, at 22. That, might even be an understatement, the expositive part of the 4-page motion reads in in its entirety:

> Having dismissed Third-Party Complaint against the "State" for lack of federal jurisdiction Plaintiffs have failed to state a claim under 42 U.S.C. § 1983, which grants this District Court jurisdiction over individual codefendants Efrain Pomales, Maribelle Lagares Rossy and their Conjugal Partnership. Any surviving State Claims under Puerto Rico Torts Law should be remanded to State Courts for corresponding process or dismissed without prejudice, if applicable.

The first aspect that Plaintiffs respectfully request the Court to consider is that the request for dismissal was made as to only Mr. Pomales, Mrs. Lagares, and their Conjugal Partnership. No request is made as to <u>any</u> of the other known defendants, Colegio Girasol, Mr. Feliciano and Mrs. Osorio, or Pomales and Lagares in their official capacity. Therefore, the request for dismissal should not be extended to other parties, since it is not alleged that they are in the same position as Mr. Lagares and Mrs. Rossy, and, in fact, are represented by separate counsel, and have not filed similar requests.

The petition for dismissal as to Mr. Pomales and Mrs. Lagares, likely pertain only to their personal responsibility, which might be separate from the role of the other defendants. A dismissal against them does not necessarily entail a dismissal against Colegio Girasol or the other parties. The Court can grant dismissal as to only some defendants, see for example, *Martinez v. Wexford Health Servs*., Case No. 3:18-cv-50164, 2021 U.S. Dist. LEXIS 75255*, 1*2021 WL 1546429 (N. Dist. Illinois, W. Div, 2021).

In describing the reason for requesting relief, Pomales and Lagares, allege that since the dismissal of Third-Party Complaint against the DOE, or "the State," implied the court did not have jurisdiction, either, over Pomales and Lagares. However, before, the filing of the Third-Party Complaint, the "State" or the DOE, <u>was not a party</u>. The dismissal of the Third-Party

3

Complaint merely restored the status of the case to what it was before the inclusion of the DOE in the complaint.

The argument underlying the original complaint were violation of guarantees under the U.S. Constitution, not violation of the IDEA, as was the argument of the Third-Party Complaint. In arguing for the dismissal against Pomales and Lagares, these defendants were necessarily arguing that, they were in exactly the same position as the DOE, so that the Plaintiffs also needed to exhaust administrative remedies against them for the original complaint to proceed. The Opinion and Order dismissing the Third-Party Complaint, ECF No. 114, cites *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 59-60 (1st Cir. 2002), to indicate that plaintiffs that bring an IDEA based claim, under § 1983, in which they seek money damages must exhaust administrative process under the IDEA so plaintiffs had to exhaust administrative remedies under the IDEA, "even when asserting a § 1983 claim." ECF No. 114, at 8-9. This is, necessarily, the argument adopted by Pomales and Lagares in their Motion to Dismiss.

The Motion to Dismiss cannot be construed then as a Motion to Dismiss the constitutional claims made under 42 U.S.C. § 1983. Such dismissal would only be a totally, *sua sponte* action by the court, as the court, appears to state. Except, that, since the Motion to Dismiss does not concern the constitutional violations, no notice to Plaintiffs was propounded as to deficiencies in the original complaint, as alleged by the Court at ECF No 139, page 22. See *Giles v. Volvo Trucks N. Am.*, 551 F. Supp 2d 359, 369 (M.Dist. Penn., 2008) ("The notice and opportunity to be heard may be provided by the act of a single defendant who raises a defense applicable to all defendants.") (emphasis added). It is clear that the only defense raised in the Motion to Dismiss was the same under which the Third-Party Complaint was dismissed, exhaustion under the IDEA, no for constitutional claims. No dismissal can be had as to claims that plaintiffs have not been given an opportunity to oppose. See *Acequia, Inc. v. Prudential Ins.*

4

*Co. of Am.*, 226 F.3d 798, 807 (7ᵗʰ Cir., 2000) ("where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiffs had an adequate opportunity to argue in opposition."). This is because a party opposing a motion has no obligation to address grounds not raised in said motion, see *Titran v. Ackman*, 893 F.2d 145, 148 (7ᵗʰ Cir., 1990).

The Honorable Court, states, in footnote 2, ECF No. 139, page 2, that it considered the arguments presented by the parties in relation to the Court's Show Cause Order (ECF Nos. 115, 119, 124, 129), but the Court issued the Show Cause Order for the parties to "SHOW CAUSE as to why this action should not be dismissed for lack of subject matter jurisdiction due to the non-exhaustion of administrative remedies under the IDEA …" No, reference to constitutional claims under § 1983 was made as a reason for the Show Cause Order.

III

In discussing its main argument, the Court insist that the seeking of money damages, "does not transform their underlying IDEA claim." ECF No. 139 at 7. It states that the Court in *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017), did not address a case in which a plaintiff although charging the denial of a FAPE, seeks money damages as result of emotional injury. ECF No. 139, at 8, and that the First Circuit does not appear to have address the question of exhaustion and money damages posed by *Fry*.

The Court first discuss that the gravamen of the complaint entails a violation of a FAPE, the key factor considered by the Court, although placed in footnote No. 5, ECF No. 139, at 13, however, is that the incident actually took place in a school environment, because while the Plaintiffs assertion that the claims in the complaint could have taken place in library, summer camp, hospital or other public institutions, "is **theoretically accurate**, Plaintiffs claims of negligence and constitutional breaches were not submitted in isolation. Instead, Plaintiffs frame

their claims based on Defendants' "statutory mandate to protect the child, including health concerns." (ECF No. 49 at 23).

The Fifth Amended Complaint, ECF No. 49 at 22, not 23, alleges (emphasis added) "[a]llegations of Callous indifference are sufficient to state a claim of constitutional deprivation under § 1983 because the State, through the private institution, had a statutory mandate to protect the child including health concerns and the preservation of substantive and procedural due process of law."

But the fact that the claims took place at a school environment do not preclude a claim for a claim for relief for substantive due process violation or convert the claim automatically into an IDEA claim. That is why the Court in *Fry* designed a test to determine if a claim against the school was, in fact, a claim for a denial of a FAPE or not. See *Fry,* 580 U.S. at 171.

The Court then discusses the case of *Luna-Perez v. Sturgis. Sch.*, 598 U.S. 142 (2023), in the context that the plaintiff in it "unambiguously sought compensatory damages," after obtaining all forward-looking equitable relief he requested. after ECF No. 139, at 17. The Court cites, *Li v. Revere Loc. Sch. Dist.,* 21-cv-3422, 2023 WL 3302062, at *13 (6th Cir. May 8, 2023), stating that the claims in that case were unclear. It states that Plaintiffs reliance on *Luna-Perez* if off the mark because, the facts of the case are not analogous, since there were not administrative proceedings in the instant case, and because the case dealt with relief under other federal administrative statutes, and that Plaintiffs in this case are not alleging violations of ADA or similar anti-discriminatory statutes.

In *Luna-Perez*, did not limit its holding to ADA or other anti-discriminatory statutes, the emphasis is clearly in what relief is requested, and if the IDEA can provide it. Section 20 U.S.C. § 1415(l), interpreted by the Supreme Court, expressly states that "Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the

Constitution, the Americans with Disabilities At of 1990, title V of the Rehabilitation Act of 1973, or other Federal Laws protecting the rights of children with disabilities, …" (emphasis added) Therefore, a cause of action under 1983 for constitutional violations, does not require exhaustion.

In *Fry* the court decided that exhaustion does not apply unless the plaintiffs seeks relief for denial of a FAPE, *Luna Perez*, 598 U.S. at 149. In *Luna Pérez* the court evaluated that even if a case is premised on a past denial of a FAPE, the case can proceed without exhaustion of administrative remedies if the relief requested is not one IDEA can provide. The answer is that no exhaustion is required.

Therefore, in the instant case, even if it were to be correct that the claims of the original complaint relate to a past denial of a FAPE, a conclusion that Plaintiffs vehemently deny, under *Luna Perez*, no exhaustion is required since the relief requested is only compensatory damages for past harms.

The court does cite the case of *Li* for the proposition that if claims in the complaint are not clear exhaustion is required. The Court states that "Plaintiffs have failed to parse out which portions of these damages relate to past, present, or future harm." ECF No. 139, at 19. It further states that "Plaintiffs' failure to distinguish between past, present, and future harm in their damages claim is critical, as the burden to establish subject matter jurisdiction rest with Plaintiff, thereby undermining their attempt to bypass the IDEA's exhaustion requirement. ECF No. 139, at 20. "This lack of distinction makes their claim for monetary damages indistinguishable from the compensatory education relief available under the IDEA."

However, the Original Complaint, ECF No. 49, at 24-27, in describing damages suffered by the parties at averments 111-120, state clearly and unambiguously that, emphasis added:

111.Minor D.A.L.P. **suffered** physical damage by being assaulted to the

7

point of physical damage to its teeth and face including bleeding that required medical care, while under the supervision and care of Colegio Girasol and all the codefendants, directly or indirectly.

112. Minor D.A.L.P. **suffered** pain and emotional anguish as a direct result of the physical assault suffered while under the supervision and care of Colegio Girasol and all the codefendants, directly or indirectly.

113. The pain and emotional anguish **were** exacerbated and intensified due to the Colegio Girasol, and all the codefendants, failure to provide medical and emotional assistance or to promptly and timely notifying the parents of D.A.L.P. so that they could assist in timely alleviating and taking care of D.A.L.P. to minimize damages.

114. Minor D.A.L.P. **suffered intense** and prolonged emotional distress and emotional pain for having been assaulted while under the custody of Colegio Girasol and having to remain in the presence of the aggressor and without any assistance the entire school day.

115. Minor D.A.L.P. **suffered** physical and emotional damages and consequences as a result Colegio Girasol's poor educational practices, lack of appropriate protocols to handle situations of violence at the school that should have been anticipated due to the characteristics and needs of the students serviced by the school.

116. Minor D.A.L.P. **suffered** lasting psychological and emotional damages and consequences because of Colegio Girasol's failure to maintain a stable, knowledgeable, professional and committed faculty and school officials who could competently educate and supervise special needs children and well as detrimental educational practices. This led to a result that instead of receiving an appropriate education as was required under applicable statutes in a safe and welcoming environment, D.A.L.P. was subject, **instead to an anxiety and damages producing experience lasting for, at least, months, that caused emotional trauma, at least, since in-person classes started on August 2021, and that led to substantial physical and emotional consequences and long lasting emotional and psychological consequences that limited the learning process and that turned into a form of continuous emotional assault. This environment even led to the physical assault described above.** The substantial physical consequences consisted of stomachal problems during extended period of time while at Colegio Girasol and for some time afterwards and the physical injuries described above. The lasting emotional and psychological consequences of the environment Colegio Girasol allowed to exist while D.A.L.P. was enrolled there, persisted even after D.A.L.P. was changed to a new school. As demonstrated, for example by a rejection of uniforms and strong reactions when approaching areas that remind him of Colegio Girasol.

**117. It is unclear if D.A.L.P. will fully overcome the traumatic experiences suffered while at Colegio Girasol.**

118. Co-plaintiffs Mr. Lignos and Mrs. Padilla **suffered** intense emotional damages by having to observe the emotional distress their son experienced after in-person classes started at the Colegio Girasol, also manifested in physical conditions suffered by their son. The emotional damages that **were** taking place due to the school's blatant and cavaliere attitude towards students and particularly D.A.L.P. was magnified and made self-evident when the school allowed their lack of oversight, supervision and control of the students and their personnel to cause physical damage to D.A.L.P. on December 14, 2021. These damages were further exacerbated when the negligent, abusive, and cavalier attitude of the school directors and personnel allowed D.A.L.P. to remain injured, without any medical assistance, despite having been physically assaulted and been bleeding, for just about the entire day, not even a clean face mask was provided and no notice to parents was provided. The parents, co-defendants Mr. Lignos and Mrs. Padilla, **suffered** intensively when they were forced to contemplate that their son had been left without medical attention and alone, without their parents' assistance, in the same classroom in which he was assaulted, with the consequences such experience has had, is having, and could still have in the future.

119. The parents have also **suffered** intensively by their present knowledge that they unknowingly had placed their child for months in an environment, that they trusted was a specialized school for children such as D.A.L.P., with competent and dedicated staff, but that ultimately was shown to have been profoundly detrimental to their child, to the point of even putting his physical and emotional well-being in actual danger.  This damage is compounded by their knowledge that the consequences of D.A.L.P. stay at Colegio Girasol are still on-going and that damage might be irreversible.

120. <u>All the Plaintiffs damages</u> **are a direct result of events and practices under the absolute control of the school and the staff mentioned in the complaint or yet unknown and would not have happened except for D.A.L.P. having been enrolled at Colegio Girasol and under the control of its staff, jointly or severally, in their personal and official character, throughout the schooldays, at least, since August 2021 and specially on December 14, 2021. <u>Therefore, all damages are directly related and are a direct consequence of the actions and or omissions of all the defendants, on December 14, 2021, and the months before that date.</u>**

Therefore, it is patently clear that all damages "are directly related and are a direct consequence of the actions and or omissions of all the defendants, on December 14, 2021, and

the months before that date." That is what the plaintiffs allege. The only averment that might be interpreted as pertaining future relief states, averment 117, states: "It is unclear if D.A.L.P. will fully overcome the traumatic experiences suffered while at Colegio Girasol." ECF No. 49, at 26. But even this averment is fully grounded on the "traumatic experiences suffered while at Colegio Girasol." Therefore, all claims for damages refer to "backward-looking" damages. Plaintiffs respectfully allege that <u>no other interpretation is possible</u>.

The fact that plaintiffs stated that "[p]resent, past, and future damages to DALP are estimated in …" do not alter the fact that all damages claimed are based on actions and omissions "on December 14, 2021, and the months before that date." ECF No. 49, at 27. **Therefore, Plaintiffs understand the Honorable Court misapprehended the averment of the complaint as to damages, and that plaintiffs clearly stated that all the damages look for backguard looking relief, not available under the IDEA.**

As the Court itself stated, citing *Fry*, the court is required to look the substance and gravamen of the complaint, and not the use or non-use of particular labels and terms. ECF No. 139, at page 8. All the damages claimed, and relief requested unambiguously seek relief not available under the IDEA.

The court asserts that allegations of harm are labeled as "emotional damages" and offer nothing more than conclusory allegations, it cites pages 11-14, 16, 22, 24-27 of the Original Complaint, ECF No. 49. However, pages 11-14 detail events that took place on December 14, 2021, and consist mostly of factual statements, that might be true or false but are not conclusory. At page 16, the averment expressly mentions Mr. Lignos and Mrs. Padilla emotional damages due to having to observe their son's physical and emotional injuries at Colegio Girasol, which had been describe in detail at pages 8-16, such as behaviors shown by DALP and described by the school as "bad behavior," averment 32; incident in which D.A.L.P. allegedly insulted a

teacher and threw away a ball, averment 40, that caused DALP "to cry and express, within his substantial communication limitations, his inconformity and fear of attending Colegio Girasol, averment 42; "frequent physical manifestation of distress such as abdominal pain and discomfort were recurrent during this period," averment 43, "D.A.L.P.'s psychologist recommended a change of school …", averment 44; "[w]hen Mr. Lignos removed D.A.L.P.'s face mask in the car, he observes that it was stained with blood, that D.A.L.P. has swollen lips and that part of a tooth was broken," averment 46; "[i]n the notification notebook is was written that at 10:15am, DALP was hitting his school desk and chair when another student, that has not been identified assaulted and slapped him, allegedly causing D.A.L.P. to bit his lip and start bleeding," averment 47, "… no notice whatsoever was given to the parents until the end of the school day when the child was picked up by his father and then, the only information was what was in then notebook despite the father's insistence to obtain additional information," averment 52; "in the various alleged incidents that took place before December 14, 2021, the school did not discuss any measures to address the alleged misconduct despite the parent's inquiries …," averment 59; "Mr . Daniel O. Feliciano … determined that it was not necessary to call the parents after the incident, despite D.A.L.P.'s physical injuries and bleeding, and decided to return him to the classroom, …," averment 62; "D.A.L.P.'s behavior and stress level deteriorated once he started in-person classes at the school in August 2021," averment 64; "[a]fter the incident of December 14, 2021, D.A.L.P. suffered a worsening of stomach problems that he had been suffering since returning to Colegio Girasol in August 2021, he has been anxious and shows and extreme repulse to Colegio Girasol even when in a car near the Colegio Girasol location. Prior to the incident on December 14, 2021, D.A.L.PP. lost 15 pounds of body weight in a two-month period," averment 71; "[e]ven after moving to a new school with substantially more welcoming atmosphere and personnel, D.A.L.P. continued showing strong resistance to the use of uniforms or any action

11

that suggest a school environment, … that has require extensive psychological treatment, that is still on-going just to somewhat facilitate his continued education …" That any parent will suffer emotional consequences as a result of the events described above, that included physical manifestation of distress, physical assault leading to bleeding, the school failure to timely notify them, etc. is undisputable.

At page 22, the complaint discusses the callous indifference allegations, not specific allegations of emotional harm. At pages 24-27, cited before, the allegations are very specific that "D.A.L.P. suffered physical damage to its teeth and face including bleeding that required medical care …," that D.A.L.P suffered pain and emotional anguish as a direct result of the physical assault …; that the emotional anguish was exacerbated by failure to provide medical and emotional assistance and timely notify parents, that substantial physical consequences consisted of stomachal problems during extended period of time while at Colegio Girasol and for some time afterwards and the physical injuries described, that emotional consequences persisted after D.A.L.P was changed to a new school, as demonstrated by rejection of uniforms and strong reactions when approaching areas that remind him of Colegio Girasol. Therefore, none of these allegations of physical and emotional harm demonstrated in specific acts and behaviors, are conclusory. The Court cites *Serrano v. Nicholson Nursery*, 844 F.Supp. 73, 75 (D.P.R. 1993), but this case involved a diversity case of a legal controversy for the sale of Christmas trees. The controversy related to jurisdictional amount and the specific discussion as to damages referred to damages for breach of contract, and the plaintiffs failed to provide any evidence of damages as they just accepted to correction of an estimate. This case in no way supports that, the serious physical and psychological damages suffered by a son or daughter, as described in the Original Complaint do not cause emotional harm on a parent.

The citation to *Li,* is also inapposite, the Court explained:

12

In *Perez*, the Supreme Court held that a suit "admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes *if the remedy a plaintiff seeks is not one IDEA provides*." *Id.* at 865 (emphasis added). Throughout this litigation, it has been unclear exactly what form of relief the Lis seek from Count 3. They claim, **in the citation of supplemental authority, that they seek compensatory damages**. But in the body of **Count 3, the Lis merely state that Defendants' actions "deprived T.L. of the right to a free appropriate public education under Section 504 and the ADA,"** and as a result of such actions the Lis "suffered damages, continue to suffer extreme emotional distress, the loss of educational opportunities, as well as other damages as a matter of law, attorney's fees, costs, and expenses." R. 1, PID 28. **At no point in their complaint do the Lis explicitly ask the court for compensatory damages under the ADA and Section 504, as opposed to some other form of relief like a compensatory education, reimbursement for T.L.'s educational expenses, or equitable relief like expunging the expulsion from T.L.'s disciplinary record**.

*Li*, 2023 U.S. App. LEXIS 11284*, *33-34, 2023 WL 3302062, No. 21-3422 (6th Cir., 2023).

The instant case is light-years away from *Li*, in which the plaintiffs "at no point in their complaint," sought compensatory damages under other federal statutes. As described above, in the instant case the only relief requested is compensatory damages for constitutional violations under § 1983.

Furthermore, *Li* describes the difference between forward-looking equitable relief, such as additional schooling, compensatory education, reimbursement, expungement of disciplinary records, and backward-looking relief in the form of compensatory education, *Li* at *34.

The Court states that: "the allegations regarding payment delays, withholding of grades, and their direct impact on D.A.L.P.'s education demonstrate the relief they seek is compensatory education to 'remedy a past denial of a FAPE.'" ECF No. 139, at 16. It is further stated that compensatory education can take the form of an award with a dollar figure attached to "place disabled children in the same position they would have occupied but for the school district's

violation of IDEA." ECF No. 139, at 16. But nothing in the Original Complaint is directed to obtaining any compensatory services or to obtain services to remedy a past denial of a FAPE. As explained before the only relief requested is compensatory damages arising from past injuries and damages. The reference to payments delays, withholding of grades are merely describe that on the same date of the incident, December 14, 2021, and while the events of the physical assault against D.A.L.P, was taking place, the school was informing the parents that "D.A.L.P. would not be receiving grades, nor allowed to take the semester final exams, due to a delay in payments." ECF No. 49, averment 26, page 7. No relief is being requested as to such delays. The Court appears to be referring to the Third-Party Complaint in which reimbursement was requested, and where the matter of payments delays was discussed. **The Court misapprehending the nature of the Original Complaint as related to the Third-Party Complaint, which although related sought very distinct remedies under different causes of action.**

The Court refers to the case of *Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 515 (5th Cir. 2024), for the proposition that for exhaustion not to be required, the suit must be under ADA or similar anti-discrimination statutes, and the complaint must be predicated on FAPE denial  but seek relief that IDEA not provide. ECF No. 139, at 18-19.

However, plaintiffs maintain that the present case is not a case about a denial of a FAPE, because it does not <u>seek a relief</u> for the denial of a FAPE, they seek compensatory damages, see *Fry* at 168. A claim seeks relief for denial of a FAPE, when a hearing officer under the IDEA can grant such a relief. As explained in *Fry* at 168-169, emphasis added:

> But if, in a suit brought under a different statute, the remedy sought is not
> for the denial of a FAPE, then exhaustion of the IDEA's procedures is not
> required. After all, the plaintiff could not get any relief from those
> procedures: A hearing officer, as just explained, would have to send her
> away empty-handed. **And that is true even when the suit arises directly**

14

**from a school's treatment of a child with a disability—and so could be said to relate in some way to her education. A school's conduct toward such a child—say, some refusal to make an accommodation— might injure her in ways unrelated to a FAPE, <u>which are addressed in statutes other than the IDEA. A complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to §1415(*l*)'s exhaustion rule because, once again, the only "relief" the IDEA makes "available" is relief for the denial of a FAPE</u>.**

Therefore, the Courts statement to the effect that the core of the complaint is that the school failed to provide D.A.L.P. with a FAPE, see for example ECF No. 139 at 13, are not pertinent to the analysis if exhaustion is required. The analysis concerns the relief requested, even if circumstances of the case could be construed also as a violation of a FAPE, something that Plaintiffs deny, but that the Court appears to have adopted as grounds for the decision.

The Supreme Court in *Fry* also explained that (emphasis added):

**That inquiry makes central the plaintiff's own claims,** as §1415(*l*) explicitly requires. … The statutory language asks whether a lawsuit in fact "seeks" relief available under the IDEA—**not, as a stricter exhaustion statute might, <u>whether the suit "could have sought" relief available under the IDEA (or, what is much the same, whether any remedies "are" available under that law)</u>.** See Brief for United States as *Amicus Curiae* 20 (contrasting §1415(*l*) with the exhaustion provision in the Prison Litigation Reform Act, 42 U. S. C. §1997e(a)). **In effect, §1415(*l*) treats the plaintiff as "the master of the claim": She identifies its remedial basis—and is subject to exhaustion or not based on that choice.** *Caterpillar Inc.* v. *Williams*, **482 U. S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318, and n. 7 (1987).** <u>A court deciding whether §1415(*l*) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education.</u>

Therefore, <u>the Court misapprehends the nature of the case</u>, because even if the case could be construed as related to a FAPE, and even if the Plaintiffs could have brought a claim under the IDEA, for relief under the IDEA, to obtain compensatory education, or a change or school, or psychological services to mitigate the physical assault and emotional torture inflicted on DALP and his parents, <u>that is not the relief the Plaintiffs seek in the complaint</u>. That is what

the court must examine and not attempt to impose a form a relief that the court consider the defendants must seek, or that could have been available to them. The various references that "[p]laintiffs cannot camouflage their IDEA claim 'in other garb' when the fundamental nature of the claim asserts a denial of FAPE under the IDEA" ECF No. 139 at 14, or that "This at bottom, is a denial of a FAPE. The 'periphrastic circumlocutions' sprinkled through the Complaint to the contrary does not change that the overwhelming substance of their Complaint are claims of a deficient FAPE." ECF 139, at 14, cannot be dispositive.

The Court **misapprehends** that under *Fry*, the court cannot evaluate if the substance of the complaint paints a deficient FAPE, that might well be the case, although plaintiffs deny it, to determine if exhaustion is required. The court must examine if "the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way. *Fry* at 170. Redress for a school failure to provide a FAPE is only such relief that a hearing officer under the IDEA can provide. "If that accommodation is needed to fulfill the IDEA's FAPE requirement, the hearing officer must order relief. But if it is not, he cannot—even though the dispute is between a child with a disability and the school she attends." *Fry* at 167. In other words, exhaustion under the IDEA is required if the relief is something that can be included in an Individualized Education Program (IEP) to provide a FAPE. If it is not, no exhaustion is required.

The Plaintiffs' request of compensatory damages from the Plaintiffs is not something that will fulfill a FAPE requirement, is compensation for injuries suffered, a suit under "another federal law [the U.S. Constitution] for compensatory damages—a form of relief everyone agrees IDEA does not provide." *Perez*, at 148. Therefore, under the above stated, controlling precedents no exhaustion is required for the claims in the Original Complaint at ECF No. 49.

IV

On the second part of the Opinion and Order at ECF No. 139, the Court discussed the Court's inherent authority for *Sua Sponte* dismissal. The Court first asserts that "Defendants do move for dismissal stating, 'Plaintiffs have failed to state a claim under 42 U.S.C. § 1983,' thereby putting Plaintiffs on notice of arguable deficiencies in their substantive sue process claims." ECF No. 139, at 22.

As discussed in part II, the Motion to Dismiss could not have provided any notice to Plaintiffs as to alleged deficiencies in their constitutional claims. The Court appears to recognize this when it states that "this Court also has inherent authority to manage and review a case and dismiss a complaint sua sponte for failure to state a claim." ECF No. 139, at 22. The Court recognizes that to dismiss a complaint *sua sponte*, the parties must have "notice and an opportunity to amend or otherwise respond." ECF No. 139, at 23-24. Citing *Chute v. Walker*, 281 F.3d 314, 318-320 (1st Cir. 2002).

The court asserts that notice and opportunity to amend or otherwise respond, was given because the plaintiffs responded to Defendants' Motion. This statement is incorrect, and the Honorable Court **misapprehended** to what extent the Plaintiffs had notice of the matters now raised *sua sponte.*

In their "Motion to Deny Motion to Dismiss as a Matter of Law, in the Alternative, Requesting Order for Clarification of Motion, and to Postpone Briefing and for Extension of Time to File Response." ECF No. 118, the Plaintiffs argued the Motion to Dismiss should be considered a Motion for Judgment on the Pleadings under rule 12(c), but that it should be dismissed because it failed to reference any pleadings in the instant case, did not comply with Rule 7(b) of the Federal Rules of Civil Procedure, in that it "fail to discuss the legal theory or, alleged absence thereof, of the Plaintiffs; or to discuss the facts of the original complaint." ECF

17

No. 118 at 3. It was stated that "[a]ny attempt by the Plaintiffs to respond would require them to speculate as to the basis of the Motion to Dismiss causing undue harm to them since they would proceed blindly, thus being placed in an indefensible position to argue as that [sic] what could [be] the real underlying arguments of the movant." ECF No. 118, at 3-4. Other defenses were argued, including that the Third-Party Complaint was not final, and in fact, never became final.

In the alternative it was argued that the holdings of the Opinion and Order dismissing the Third-Party Complaint, were distinct from the Original Complaint. Plaintiffs discussed the application of exhaustion in the context of the Original Complaint requesting money damages. As to the possibility of discussing the failure to state a claim, the Plaintiffs discussed as to the possible allegation that Pomales and Lagares were or were not state actors, or that exhaustion applied to them. ECF No. 118, at 13. Plaintiffs stated that "Plaintiffs cannot discern any other reason and are thus impeded in responding." ECF No. 118, at 14. Therefore, no notice or opportunity to amend or respond derived from the Motion to Dismiss, as the Court implies.

The Court cites the case of *González-González v. United States*, 257 F.3d 31, 36 (1st Cir. 2024), for the proposition that if a defendant files a motion to dismiss the plaintiff, as a practical matter, has notice of the motion and an opportunity to amend the complaint. ECF No. 139, at 24. But that is just *dictum,* because in the case no notice was provided whatsoever, just as in the instant case, the court decided that sus sponte dismissals are risky business, it proceeds only if the complaint is patently meritless and beyond all hope of redemption and proceeded to vacate the dismissal and remand. *González-González*, 257 F.3d at 37, 39. See also *Giles v. Volvo Trucks N. Am.*, 551 F. Supp.2d at 369 (Before *sua sponte* dismissal is appropriate, however, a Court must give a plaintiff notice and an opportunity to be heard on the legal validity of his complaint."). See also, *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir., 2006) (a court cannot sua sponte enter summary judgment or dismiss a complaint without notifying the parties

of its intentions and allowing them an opportunity to cure the defect in the complaint or respond."). In the instant case, even though all defendants were represented by counsel, and several of them by more than one counsel (Pomales and Lagares), no one filed a motion to dismiss as to the Original Complaint, except from the bare bones, Motion to Dismiss, that did not constitute a challenge to the constitutional arguments raised in the Original Complaint, as discussed above.  See arguments in section II, *supra*. The Court only adviced the parties of its intention to dismiss for exhaustion, not for failure to state a claim as to constitutional grounds of action under § 1983.

The statemen that "[h]ere Defendants filed a Motion to Dismiss for failure to state a claim, Plaintiff has notice of the Motion, an opportunity to amend their already fifth Amended Complaint, and did respond to Defendant's Motion (ECF No. 118)," **ECF No. 139**, at 24, is based on the erroneous premise that the issues raised now *sua sponte* by the Court had been presented before in the Motion to Dismiss. That is not the case as discussed above.

Therefore, *González-González,* and other cases cited above, advise that this Court reconsiders its determination. The Court **misapprehends** the fact that the Motion to Dismiss constituted any form of notice, for the reasons set forth before, and the reference to an inapplicable case law indicates that the Court is incurring a manifest error of law.

Obviating the lack of notice or opportunity to amend, the Court then discusses what it understands as a failure to state a claim, it concentrates its argument in that the conduct alleged in the complaint "does not describe the type of egregious behavior required to shock the conscience. ECF No. 139, page 26. However, the Original Complaint, does contains allegations that can be construed as raising a constitutional duty to protect, because "for limited purposes and for a portion of the day, students are entrusted by their parents to control and supervision of teachers in situations where-at least as to very young children—they are manifestly unable to

look after themselves." *Hasenfus v. LaJeunesse*, 174 F.3d 68, 72(1st Cir. 1999). In the instant case, D.A.L.P. was not a "very young child", but was a special need student that would be equivalent to a small child, as described in the complaint. It is also alleged in the Original Complaint that D.A.L.Pl was placed, coerced, in a position in which he could not attend to his own well-being and without the support of his parents, which the School personnel affirmatively decided not to call for assistance, see *Frances-Colon v. Ramírez,* 107 F.3d 62, 63-64 (1st Cir. 1997). The school personnel certainly had the opportunity to reflect and make reasoned and rational decisions, such as providing medical care or calling the parents. This conduct may suffice to "shock the conscience." *Melendez-García v. Sánchez*, 629 F. 3d 25, 37 (1st Cir. 2010); see also *Rivera v. Rhode Island*, 402 F. 3d 27, 36 (1st Cir. 2005). In the instant case, it is alleged that the school, and its personnel had ample opportunity to respond the parents' requests for meetings to allow the parents to intervene in what was causing the effect on bodily integrity of DALP, as alleged in the Original Complaint. In the instant case, what was outrageous was the school and school personnel alleged indifference to resolve, or at least mitigate the harms inflicted on DALP. Particularly on December 14, 2021, not even physical injury of a  special education child, unable to defend himself, was not serious enough to contact parents or provide medical assistance, when, as alleged in the Original Complaint they had ample time to reflect and make correct decisions.

Furthermore, at the pleading stage is not necessary to establish a prima facie case, see *Rodríguez-Reyes v. Molina-Rodríguez,* 711 F.3d 49, 54 (1st Cir. 2013).  Under the standards referenced in *González-González*, that indicates that the standard for a *sua sponte* dismissal requires that the allegations contained in the complaint are "patently meritless and beyond all hope of redemption," *Id.* at 37, no *sua sponte* dismissal is warranted. Particularly, if as indicated, the Motion to Dismiss did not provide any notice of the basis for the dismissal, and the Court

has not afforded an opportunity to amend. "[w]here, as here, a court jettisons an action sua sponte, the dismissal deprives the plaintiff of these core protections." *Id.* at 36. "But haste makes waste, and it will be the rare case in which a sua sponte dismissal—at least a sua sponte dismissal without leave to amend—will be upheld." Id. at 37.

The Opinion and Order also indicates at footnotes 9 and 10 and that the Complaint also fails to state a cause of action under "state-created danger," "special relationship," "callous indifference" and under *Monell v Dep't of Soc. Servs*. 436 U.S. 658, 694-95 (1978) (claims against a municipality). The fact that the Court does not develop these arguments, it would be even more difficult for Plaintiffs to respond, had the Order constituted notice to respond, or an opportunity to amend granted.

## CONCLUSION

For the reasons discussed above, plaintiffs respectfully request the Court to reconsider and vacate the Judgment and Opinion and Order at ECF No. 139 and 140 and order the continuation of proceedings. As discussed above Plaintiffs did not need to exhaust administrative remedies since they only seek compensatory damages, not relief that will provide a FAPE. Dismissal *sua sponte* of this action is also not warranted for the reasons discussed above, particularly since, as discussed, not notice has been given, nor an opportunity to amend the complaint.

WHEREFORE, Plaintiffs respectfully request the Honorable Court to take notice of the afore stated, reconsider and deny Defendants' Motion to Dismiss at **ECF No. 116**, ordering the continuation of proceedings in the instant case. In the alternative that opportunity for Plaintiffs to respond, or amend, prior to a dismissal be granted.

RESPECTFULLY SUBMITTED.

CERTIFICATE OF SERVICE: I hereby certify that on this same date, I electronically

filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all attorneys of record.

In San Juan, Puerto Rico this 20th day of September 2024.

Antonio Borrés Otero, Esq.
P.O. Box 361608
San Juan, PR  00936-1608
Tel. 787-404-8637; Fax 787-705-8618
aborreslaw@gmail.com

s/ *Antonio Borrés Otero*
Antonio Borrés Otero
USDC-PR No.213210