## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LIGNOS-LÓPEZ, et al.,** | |
| **Plaintiffs,** | |
| **v.** | Civ. No. 22-01419 (MAJ) |
| **SERVICIOS DE TERAPIA EDUCATIVA GIRASOL, INC., et al.,** | |
| **Defendants.** | |

## OPINION AND ORDER

### I.    Introduction

Plaintiffs, Alexander Rafael Lignos-López and Vanessa Padilla-Muñoz, personally and on behalf of their minor son D.A.L.P. ("Plaintiffs"), bring suit under 42 U.S.C. § 1983 for the alleged deprivation of D.A.L.P.'s substantive due process rights. (**ECF No. 49**). Defendants Servicios de Terapia Educativa Girasol, Inc. et al. ("Defendants") operate a private school, Colegio Girasol, in San Juan, Puerto Rico. (**ECF No. 49 at 3 ¶¶ 8–9**).[1] D.A.L.P. was enrolled as a student at Colegio Girasol between 2019 and 2021. (**ECF No. 49 at 6 ¶ 21**).

On January 24, 2025, the Court issued an Order instructing Plaintiffs to show cause as to why the operative Complaint should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. (**ECF**

---

[1]    Remaining defendants Maribelle Lagares Rossy, Daniel O. Feliciano, and Azarieliz Osorio are staff at Colegio Girasol. (**ECF No. 49 at 3–5 ¶¶ 12–15**). All other remaining defendants are their conjugal partners, insurers, or unnamed colleagues. (**ECF No. 49 at 3–6 ¶¶ 12–19**).

No. 146). Shortly thereafter, Plaintiffs filed a Motion in Compliance with that Order. (**ECF No. 147**). After careful consideration, the Court finds that dismissal is warranted.[2]

## II.    Factual Background[3]

According to the Fifth Amended Complaint ("Complaint"), Plaintiffs are the parents of D.A.L.P., a student with learning disabilities who attended Colegio Girasol between 2019 and 2021. (**ECF No. 49 at 6 ¶ 21**). During the time that D.A.L.P. was enrolled at the school, Colegio Girasol was under an agreement with the government to provide services to D.A.L.P. "in accordance with an individualized educational program ('IEP')." (**ECF No. 49 at 7 ¶ 23**).[4]

The facts set forth in the Complaint arose during the COVID-19 pandemic. From August 2020 through May 2021, Colegio Girasol transitioned to remote learning. (**ECF No. 49 at 8 ¶ 29**). During that time, Plaintiffs contend, Colegio Girasol failed to satisfy its obligations to provide IEP programming to students with special needs. (**ECF No. 49 at 8 ¶ 29**). Plaintiffs further contend that during this time "teaching staff quality was declining" overall. (**ECF No. 49 at 8 ¶ 29**). When students returned to in-person learning in the Fall of 2021, "many of Colegio Girasol's teaching staff had resigned[.]" (**ECF No. 49 at 9 ¶ 37**). That semester, D.A.L.P began to show signs of behavioral dysfunction at school, and Colegio Girasol failed to take action to address his problems or to inform Plaintiffs of his struggles. (**ECF No. 49 at 8–9 ¶¶ 32, 34, 40, 41**).

---

[2]    In reaching this conclusion, the Court has reviewed the Fifth Amended Complaint, (**ECF No. 49**), Plaintiffs' Motion for Reconsideration, (**ECF No. 141**), Plaintiffs' Motion in Compliance, (**ECF No. 147**), and the totality of the record.

[3]    For the purposes of resolving this Motion, the Court treats the facts alleged in the Complaint as if they were true. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

[4]    All of Plaintiffs' claims premised on the alleged denial of a free and appropriate public education under the Individuals with Disabilities Education Act ("IDEA") have previously been dismissed for failure to exhaust administrative remedies. (**ECF No. 146 at 7**).  This Opinion and Order, therefore, addresses only Plaintiffs' claims arising under the U.S. Constitution.

On December 14, 2021, D.A.L.P. was assaulted at school. (**ECF No. 49 at 10 ¶ 45**). School records produced in connection with the incident indicate that "D.A.L.P. was hitting his school desk and chair when another student . . . assaulted and slapped him . . . causing D.A.L.P. to bite his lip and start bleeding." (**ECF No. 49 at 10 ¶ 47**).[5] D.A.L.P. sustained "a broken tooth and face swelling" from the assault. (**ECF No. 49 at 14 ¶ 66**). Plaintiffs allege that Defendants were "negligent in no[t] taking measures so that students at the school maintained an appropriate level of discipline and were appropriately supervised at all times"; that Defendants also failed to adequately "preserve D.A.L.P.['s] physical and emotional health and bodily integrity by seeking medical attention" after the assault; and that Defendants failed to promptly "inform the parents" of the altercation. (**ECF No. 49 at 11 ¶ 51**). Plaintiffs also allege that following the classroom altercation, Colegio Girasol informed Plaintiffs that because D.A.L.P.'s tuition remained unpaid, his final grades would be withheld and his enrollment at the school would be suspended, contrary to their prior arrangement. (**ECF No. 49 at 14 ¶ 67**).

Plaintiffs tie this series of events to the broader patterns of dysfunction that characterized school operations during the pandemic:

> the assault . . . was . . . a direct consequence of an atmosphere in which . . . conditions at the school caused . . . a significant turn-over of personnel[,] . . . a significant disconnect between staff and supervisors . . . as well as a disconnect

---

[5]    By Plaintiffs' own admission, the details are murky. Plaintiffs concede that it "remains unclear what exactly took place" on December 14, 2021, "except that D.A.L.P. was injured by someone" at the school. (**ECF No. 49 at 10 ¶ 48**). To be clear, although the Complaint questions the accuracy of the school records, (**ECF No. 49 at 10 ¶ 48**), Plaintiffs do not allege that D.A.L.P. was assaulted by Colegio Girasol staff. Plaintiffs simply contend that "there was a lack of supervision, something triggered D.A.L.P. reaction . . . school officials were not clear as to what happened . . . and sought to dismiss the problem[.]" (**ECF No. 49 at 13 ¶ 63**). Construing the facts "in the light most favorable to the plaintiffs," the Court assumes for the purposes of this Opinion and Order that D.A.L.P. was assaulted by another student, and that the assault would not have occurred but for the school's failure to properly supervise its students. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011) ("The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted.").

with the students themselves, who were . . . left subject to neglect and/or abuse by other students and, probably, by action or omission, the school's personnel. (**ECF No. 49 at 13−14 ¶ 65**).

In sum, Plaintiffs argue that the failure of Colegio Girasol to adequately prevent or respond to the classroom altercation represents a violation of D.A.L.P.'s due process rights. (**ECF No. 49 at 16−24**). As a result of Defendants' "negligen[ce]", (**ECF No. 49 at 15 ¶ 69**), Plaintiffs maintain that they have suffered damages of at least six million dollars. (**ECF No. 49 at 27−28 ¶¶ 121−123**).

### III.        Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move for dismissal if the complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To resolve a Rule 12(b)(6) motion, federal courts follow a two-step method. First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). A complaint need not include detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (instructing that a district court entertaining a Rule 12(b)(6) motion need not "credit conclusory legal allegations [or] factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture"). Second, the court must take the remaining "well-[pleaded] . . . facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d 50, 55 (citations and quotations omitted). "Plausible, of course, means

something more than merely possible, and gauging . . . plausibility is a context-specific job that compels [the court] to draw on its judicial experience and common sense." *Id.* (citing *Iqbal*, 556 U.S. at 678–79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

## IV.    Applicable Law and Analysis

At the heart of the operative Complaint is a cause of action brought under 42 U.S.C. Section 1983, alleging a violation of Plaintiffs' substantive due process rights under the Fourteenth Amendment of the United States Constitution.[6] (**ECF No. 49 at 16–24**). To make out a viable Section 1983 claim, Plaintiffs must plausibly allege that a state actor deprived them of a federally secured right.[7] *Harron v. Town of Franklin*, 660 F.3d 531, 535 (1st Cir. 2011). As explained below, Plaintiffs' Section 1983 claim fails because Plaintiffs do not adequately allege the deprivation of any federally secured right.[8] Since no federal claims remain, Plaintiffs' supplemental state law claims are dismissed for lack of subject matter jurisdiction.

---

[6]    The Complaint also brings a cause of action arising from Puerto Rico tort law. *See infra* Section IV.B.

[7]    In addition, a Section 1983 plaintiff must allege that the deprivation transpired "under color of state law." *Harron v. Town of Franklin*, 660 F.3d 531, 535 (1st Cir. 2011). In this case, because Plaintiffs have failed to allege the deprivation of a federally secured right, the Court need not address in detail whether Defendants were acting under color of state law. For the purposes of this Opinion and Order, the Court assumes, without deciding, that all Defendants were at all times acting under color of state law.

[8]    To be clear, the only "federally secured right" at issue in this matter is D.A.L.P.'s Fourteenth Amendment right to due process; to the extent the Complaint alleges the deprivation of rights guaranteed under the IDEA, those claims were previously dismissed. *Supra* note 4.

### A. The Complaint fails to allege facts that, if true, would constitute deprivation of due process.

#### i. The Due Process Clause does not impose a general duty upon state actors to protect citizens from private harm.

The Fourteenth Amendment guarantee of due process prohibits a state actor from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV § 1. The doctrine of procedural due process "ensures that the government, when dealing with private persons, will use fair procedures." *DePoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir. 2005) (citing *Home Tel. & Tel. Co. v. City of Los Angeles*, 227 U.S. 278, 286–87 (1913)). The substantive aspect of due process, on the other hand, "safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." *DePoutot*, 424 F.3d at 118. Plaintiffs allege that the substantive due process rights of their son were violated by Defendants. (**ECF No. 147 at 2 ¶ 6**).

The constitutional guarantee of substantive due process "does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 202 (1989). As the United States Supreme Court made clear in *Deshaney*, the Due Process Clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security." *Id*. at 195. In other words, the Due Process Clause does not "impose an affirmative obligation on the State to ensure that [life, liberty, or property] interests do not come to harm through other means." *Id*. Accordingly, the Fourteenth Amendment does not confer an affirmative right to governmental aid, even in cases "where such aid may be necessary to secure life, liberty, or property interests of which the government may not itself deprive the individual." *Id*. (finding no substantive due process violation where local government

authorities knew that a specific child was at risk of physical abuse and failed to act, resulting in the child's severe and permanent brain damage); *see also, e.g., Morgan v. Town of Lexington, MA*, 823 F.3d 737 (1st Cir. 2016) (finding that the alleged inaction of school officials in response to bullying incidents did not violate the bullied student's substantive due process rights); *Hasenfus v. LaJeunesse*, 175 F.3d 68 (1st Cir. 1999) (finding no substantive due process violation based on a school's failure to prevent suicide attempt by student). In short, "deprivations resulting from negligent acts or omissions on the part of state officers are not actionable under due process provisions." *Bibiloni Del Valle v. Puerto Rico*, 661 F. Supp. 2d 155, 184–85 (D.P.R. 2009) (citing *Davidson v. Cannon*, 474 U.S. 344 (1986)).

Such is the case here. The Complaint repeatedly alleges that the harms Plaintiffs suffered were caused by Defendants' omissions. In fact, Plaintiffs concede that the harm suffered was caused by Defendants' "negligent . . . attitude" and "lack of oversight, supervision, and control of students[,]" and describe how Defendants failed their son by "no[t] taking measures . . . [to maintain] an appropriate level of discipline[.]" (**ECF No. 49 at 26 ¶ 118**); *see also* (**ECF No. 49 at 4 ¶ 12**) (alleging that Defendants are liable for "failure to inform"); (**ECF No. 49 at 21–22 ¶¶ 98–99**) (characterizing the alleged misconduct as "failure to protect" D.A.L.P., "failure to mitigate" the risk of harm, and a generalized "lack of basic human decency"); (**ECF No. 49 at 25 ¶ 113**) (alleging "failure to provide medical and emotional assistance or . . . promptly and timely notifying the parents of D.A.L.P.");[9] (**ECF No. 49 at 25 ¶ 116**) (alleging "failure to maintain a stable, knowledgeable, professional and committed faculty"). Even in more recent attempts to

---

[9]    The Court notes that Plaintiffs do not ever allege that D.A.L.P. required emergency medical care. In fact, the Complaint states that when Plaintiffs subsequently consulted a pediatrician, he recommended that D.A.L.P. treat the injury at home. (**ECF No. 49 at 10-11 ¶ 50**).

forestall dismissal by arguing that their claims "are not claims for negligence[,]" (**ECF No. 147 at 9 ¶ 22**), Plaintiffs rely on the same flawed theory, repeatedly describing Defendants' alleged conduct as a series of "omissions", (**ECF No. 147 at 9 ¶ 22**), that manifested a "lack of concern" for D.A.L.P., (**ECF No. 147 at 9 ¶ 23**), and resulted in a failure to "prevent" or "mitigate" the harms suffered by D.A.L.P. (**ECF No. 147 at 19 ¶ 41**). According to Plaintiffs, by "withholding information" and "ignoring the particular needs" of D.A.L.P., (**ECF No. 147 at 7 ¶ 17**), Defendants left them "out of the loop" and violated the Constitution. (**ECF No. 147 at 9 ¶ 23**); *see also* (**ECF No. 147 at 4 ¶ 9**) (alleging that failure to proactively inform Plaintiffs that D.A.L.P. was exhibiting behavioral issues at school or adequately respond to Plaintiffs related inquiries "rendered impossible" Plaintiffs attempts to "obtain information to assist their son"). Yet "deprivations resulting from negligent acts or omissions" are not generally actionable under the due process clause. *Bibiloni*, 661 F. Supp. 2d at 184–85; *see also Davidson*, 474 U.S. at 347–48 (holding that "lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent.").

Sensing this obstacle to relief, Plaintiffs attempt to recharacterize the allegations in the Complaint, insisting that their claims are "not claims for negligence for an assault of one student by another, and what the school could have done to prevent it," but rather that the overall "pattern of conduct" by the school was "outrageous." (**ECF No. 147 at 9 ¶ 22**). But Plaintiffs never allege that Defendants engaged in any affirmative actions that could amount to a due process violation, even when considered in combination. Plaintiffs merely insist that a holistic appraisal of all the facts alleged in the Complaint demands that Defendants be held liable. (**ECF No. 147 at 19–20 ¶ 43**) (arguing that "the environment created at the school that allowed acts that, by themselves, could probably

be construed as negligent, but in conjunction are, without a doubt, outrageous . . . [and] promoted and invited neglect and worse"). Yet the law is clear: state actors are not subject to a general duty under the Due Process Clause to affirmatively protect people from private harm. *See DeShaney*, 489 U.S. at 197 (holding that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."); *see also Morgan*, 823 F.3d at 744 (ruling that "an alleged failure of [a] school to be effective in stopping bullying by other students" is not actionable under the due process clause). The absence of any allegation of affirmative conduct that deprived D.A.L.P. of due process is fatal to Plaintiffs' claims.

The only discrete affirmative act alleged in the Complaint does not change this analysis. As noted above, after D.A.L.P. was allegedly assaulted on December 14, 2021, Colegio Girasol reportedly informed Plaintiffs that, due to his tuition remaining unpaid, D.A.L.P.'s final grades would be withheld and that enrollment at the school would be suspended, contrary to their prior arrangement. (**ECF No. 49 at 14 ¶ 67**). Standing alone, the allegation that D.A.L.P. was removed from school over a tuition dispute does not suffice to state a colorable claim under the Fourteenth Amendment. As this Court has previously explained at length, (**ECF No. 139 at 24–29**),[10] in order to bring a substantive due process claim a plaintiff must allege conduct "so extreme, egregious, or outrageously offensive as to shock the contemporary conscience[.]" *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). To rise to the level of misconduct that shocks the conscience, "the challenged conduct must be truly outrageous, uncivilized, and

---

[10]    The Court granted reconsideration of the Opinion and Order at ECF 139 on grounds unrelated to the "outrageousness" standard set forth in *DePoutot*. (**ECF No. 146**).

intolerable." *González-Droz v. González-Colón*, 660 F.3d 1, 16 (1st Cir. 2011) (quotations and citations omitted).

The notion that withholding grades or suspending enrollment over a tuition dispute constitutes "outrageous, uncivilized, and intolerable" conduct must be rejected "out of hand." *Cf. id*. at 16 (rejecting substantive due process claim "out of hand" where plaintiff complained that the government had revoked his medical license based on retaliatory animus); *see also Hasenfus*, 175 F.3d at 73 (where gym teacher dismissed student from class as a reprimand for misbehavior, it was "not a remotely plausible interpretation of the facts" to find that teacher's conduct "shock[ed] the conscience*"); see also J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010) (allegations that state officials placed two minors in a foster home where they faced sexual and physical abuse did not shock the conscience, even where state officials' conduct fell short of explicit regulatory requirements); *see also González-Fuentes v. Molina*, 607 F.3d 864, 881 (1st Cir. 2010) (noting that conduct rising to the level of "conscience-shocking" will primarily involve "violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience"). Even assuming for the sake of argument that D.A.L.P. was removed from school wrongfully, it simply would not be reasonable to describe that conduct as a malicious, sadistic, brutal, or inhumane "abuse of official power literally shocking to the conscious." *González-Fuentes*, 607 F.3d at 881. The lone affirmative act alleged in the Complaint therefore fails to establish a plausible basis for relief under the Fourteenth Amendment.

### ii. The Complaint fails to allege facts creating a special duty of care under the Due Process Clause.

In a novel theory of due process, Plaintiffs argue that Defendants violated the due process rights of D.A.L.P. by "purposefully creating a school environment for special education students, with enhanced needs, in which parents [were] excluded from meaningful contact and participation in the well-being of their child[.]" (**ECF No. 147 at 18 ¶ 40**). Plaintiffs argue that, by holding themselves out as experts "in dealing with special needs children" and accepting D.A.L.P. as a student at their school, (**ECF No. 147 at 17 ¶ 40**), Defendants assumed a "specific duty" to take action to ensure the well-being D.A.L.P. Their failure to do so, Plaintiffs allege, constituted a due process violation. (**ECF No. 147 at 10 n.1**); (**ECF No. 147 at 15 ¶ 36**); *see also* (**ECF No. 147 at 18 ¶ 40**) ("As a special education student with severe disability and communication deficit, DALP could only attend to his own wellbeing through his parents[,]" and the harms he suffered came about "through the state's interference with his ability to attend to his own well-being and the actions that prevented him from receiving timely assistance.").

For support, Plaintiffs cite to *Hasenfus*, where the parents of a student who had attempted suicide at school sued school officials under the Due Process Clause, arguing that "the school had an affirmative duty to protect [the minor] as a student entrusted to its care." *Hasenfus*, 175 F.3d at 71. In an opinion that upheld the dismissal of those claims, the First Circuit expressed skepticism that any such special duty of care exists, emphasizing that the Supreme Court has previously cast doubt on the proposition that "public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect.'" Id. at 71–72 (quoting *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 655 (1995)). Nevertheless, the First Circuit declined to "conclude now

and forever that inaction by a school toward a pupil could never give rise to a due process violation[,]" assuming "arguendo" that a special duty of care might apply under "narrow circumstances[.]" *Id.* at 72.

Even under the generous assumption that Defendants might have a "due process obligation . . . to render aid to a student in peril[,]" stating a plausible claim for relief under substantive due process still "require[s] pungent facts[.]" *Hasenfus,* 175 F.3d at 71– 72. In other words, the conduct of Defendants would have to "shock the conscience" before they may be held liable under the due process clause for mere inaction.[11] *Id.* Status as a special education student does not change this standard. *See Doucette v. Jacobs*, 106 F.4th 156, 172 (1st Cir. 2024) (declining to decide whether schools are subject to a due process obligation to protect special education students who are "manifestly unable to look after themselves" from "specific known hazards or perils" and concluding that facts alleged in the complaint nevertheless did not "shock the conscience").

Here, as in *Hasenfus*, the Court need not determine whether Defendants were subject to a special duty of care, as the allegations in the Complaint simply do not rise to a level "so extreme, egregious, or outrageously offensive as to shock the contemporary conscience[.]" (**ECF No. 139**) (citing *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005)). Instead, Plaintiffs' claims fall squarely within the ambit of *Morgan*, where the First Circuit found that the Due Process Clause was not implicated after a school allegedly

---

[11] *Hasenfus* leaves open the possibility that the more "plaintiff-friendly" standard of "deliberate indifference" – a standard previously applicable only in cases involving incarcerated people – may apply under the narrow circumstances where a school may be subject to a special duty of care. 175 F.3d at 72. It is worth highlighting that this possibility is exceedingly slim: the circuits that have confronted the argument that school children are analogous to ""incarcerated prisoners or involuntarily committed patients", such that the "deliberate indifference" standard applies to the school context, have "uniformly rejected this argument." *Id.* at 71. Yet even if the Court were to assume that the "deliberate indifference" standard applied, it would make no difference here: the allegations in the Complaint do not rise to the level of criminal recklessness. *Id.* at 72 (noting that the Supreme Court has equated "deliberate indifference" with criminal recklessness). The Court therefore need not address the issue.

turned a "blind eye" to an extended pattern of bullying that targeted a specific child. 823 F.3d at 744. Here, the Complaint sets forth allegations that are less troubling than the facts alleged in *Morgan*: Plaintiffs complain of one isolated incident where D.A.L.P. was assaulted at school. (**ECF No. 49 at 10 ¶ 47**). There is simply no allegation that D.A.L.P. was subjected to an extended campaign of bullying prior to the assault which school officials could have prevented. Nor does the Complaint allege that Defendants took any actions to isolate D.A.L.P. such that he was more vulnerable to harm. *Cf. Hasenfus,* 175 F.3d at 72 (finding that allegations against school were "not even close to violating" due process where student was dismissed from class and sent to an unsupervised area where she attempted suicide, despite recent history of repeat suicide attempts at the school). Moreover, Plaintiffs provide no support for the notion that Defendants violated the Due Process Clause when Plaintiffs were "kept out of the loop" about D.A.L.P.'s daily functioning at school. (**ECF No. 147 at 9 ¶ 23**). In *Morgan*, the First Circuit reasoned that "routine acts of school discipline, truancy enforcement, and administrator-parent conferences are not the vehicle for a substantive due process constitutional claim." 823 F.3d at 744. By the same token, a school's failure to take those routine actions cannot constitute a violation of due process.

D.A.L.P.'s status as a special education student does not distinguish this case from *Morgan*. Here, as in *Doucette*, Defendants alleged failure to take sufficient action to protect D.A.L.P. from harm did not "shock the conscience." *See Doucette v. Jacobs*, 106 F.4th 156, 172 (1st Cir. 2024) (concluding that school's failure to effectively implement special education student's seizure prevention plan did not "shock the conscience"). Defendants' alleged failures to provide adequate supervision of D.A.L.P. or affirmatively provide information to his parents plainly do not rise to the level of "egregious" or

"outrageously offensive" conduct. Instead, viewing the allegations in the Complaint in a light most favorable to Plaintiffs, Defendants' conduct may at most be described as unreasonable. That is insufficient to make out a plausible claim for relief under the due process clause. *See McConkie v. Nichols*, 446 F.3d 258, 160 (1st Cir. 2006) ("The Due Process Clause does not impose liability every time someone with state authority causes harm; otherwise, the Constitution would be downgraded to a font of tort law.") (citations omitted).

### iii.   The Complaint fails to allege facts suggesting that D.A.L.P. was subjected to a "state-created danger"

Plaintiffs also attempt to invoke the "state-created danger" doctrine, arguing that Defendants may be held liable for exposing D.A.L.P. to danger. (**ECF No. 147 at 7 ¶ 17**) (alleging that Defendants' conduct gave rise to a "state created danger"). Under this doctrine, state actors "may be held liable for failing to protect plaintiffs from danger created or enhanced by [the State's] *affirmative acts*." *Irish v. Fowler*, 979 F.3d 65, 67 (1st Cir. 2020). In other words, the doctrine allows plaintiffs to hold state actors liable under the due process clause for failure to prevent harm, but only where the relevant harm resulted from a danger that was created or enhanced by the state in the first place. The "defendant's acts" in creating or enhancing the harm must "go beyond mere negligence[,]" *id*. at 73–74, and an affirmative act is a pre-requisite to the applicability of the doctrine. *Ramos-Piñero v. Puerto Rico*, 453 F.3d 48, 55 n.9 (1st Cir. 2006) (stating that "[t]he absence of an affirmative act by the state in creating the danger is fatal" to a state-created danger claim).

However, the allegations set forth in the Complaint describe only a pattern of alleged negligence on the part of school officials. As noted above, Plaintiffs allege that

Defendants caused harm with their "negligent . . . attitude" and "lack of oversight, supervision, and control of students[,]" and describe how Defendants failed their son by "no[t] taking measures . . . [to maintain] an appropriate level of discipline[.]" (**ECF No. 49 at 26 ¶ 118**). Specifically, the Complaint alleges that Defendants failed to satisfy its obligations to provide IEP programming to students with special needs and that the overall "quality" of the services provided by Defendants was poor. (**ECF No. 49 at 8 ¶ 29**). The Complaint further alleges that when D.A.L.P began to show signs of behavioral dysfunction at school, Defendants failed to take action to address his problems or to inform Plaintiffs of his struggles. (**ECF No. 49 at 8−9 ¶¶ 32, 34, 40, 41**). As a result of this pattern of negligence, Plaintiffs contend, D.A.L.P. was assaulted at school by another student. (**ECF No. 49 at 10 ¶ 45**); *see also* (**ECF No. 49 at 4 ¶ 12**) (alleging that Defendants are liable for "failure to inform"); *see also* (**ECF No. 49 at 21−22 ¶¶ 98− 99**) (characterizing the alleged misconduct as "failure to protect" D.A.L.P. and "failure to mitigate" the risk of harm). The allegations that Defendants caused harm to D.A.L.P. by failing to take sufficient action will not suffice to invoke the state-created danger doctrine. *Ramos-Pinero*, 453 F.3d at 55 n.9 (noting that an affirmative act is a pre-requisite to the applicability of the state-created danger doctrine).

As noted above, Plaintiffs allege only one discrete affirmative act: after D.A.L.P. was allegedly assaulted on December 14, 2021, Colegio Girasol reportedly informed Plaintiffs that, due to his tuition remaining unpaid, D.A.L.P.'s final grades would be withheld and that his enrollment in the program would be suspended. (**ECF No. 49 at 14 ¶ 67**). That alleged incident, however, occurred after all the other alleged harms had already transpired, and therefore cannot serve as the basis for a state-created danger

claim, which requires a showing that the state's affirmative acts created or enhanced a danger that caused the Plaintiff harm. *Fowler*, 979 F.3d at 67.

### B. Plaintiffs remaining claims arising from Puerto Rico law are dismissed for lack of subject matter jurisdiction.

Plaintiffs only remaining claims arise from Puerto Rico law. (**ECF No. 49 at 24–27**). Under 28 U.S.C. Section 1367, a "district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction[.]" *Signs for Jesus v. Town of Pembroke, NH*, 977 F.3d 93, 114 (1st Cir. 2020). Given the fact that no federal question remains, the Court declines to exercise supplemental jurisdiction over the remaining claims arising from Puerto Rico law. Accordingly, Plaintiffs' remaining claims are **DISMISSED** for lack of jurisdiction.

### V. Conclusion

This case began in August 2022. In the three years since, Plaintiffs have amended their complaint four times. In addition, Plaintiffs have been on ample notice of the potential grounds for dismissal of the Complaint. (**ECF No. 139**); (**ECF No. 146**). Plaintiffs have been afforded a full and fair opportunity to litigate those issues and to object to the dismissal of their claims. (**ECF No. 147**). Accordingly, the Court disagrees with Plaintiffs' contention that "leave should be granted to amend the complaint" in order to allow an opportunity for "further clarification." (**ECF No. 147 at 21 ¶ 49**). Upon careful consideration of the Complaint and applicable law, the Court finds it abundantly clear that the facts alleged in the Complaint fail to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). Because Plaintiffs' Section 1983 claim is not supported by alleged facts which, if true, would amount to a violation of the U.S. Constitution or any federal laws by any state actor, that claim is **DISMISSED**. Because

this Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims arising from Puerto Rico law, those claims are **DISMISSED** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of April, 2025.

**/s/ María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**